The State v. Underwood.

THE STATE v. UNDERWOOD, *Appellant.*

1. **Motion Filed in Term**: TIME: CONSTRUCTION OF STATUTE. Section 3558, Revised Statutes, which provides that "motions in a cause filed in term shall be filed at least one day. before they may be argued or determined," is for the protection of the adverse party to a motion, and when he does not claim the benefit of it, the party filing it cannot.

2. **Continuance**: REQUISITES OF AFFIDAVIT. On an application for the continuance of the trial of an indictment for murder on the ground of the absence of witnesses, the affidavit failed to give the names of some of the witnesses, and failed to show the residence of those it did name, or state that they were unknown or that the facts which they were expected to prove were true. *Held*, that the application was properly refused.

3. **Conduct of Trial**: INDISCREET REMARKS OF JUDGE. An indiscreet remark made by the judge during the trial but immediately withdrawn, *Held*, not sufficient to justify interference with a judgment which the evidence supported, where it did not clearly appear that the prisoner was prejudiced.

4. **Officer in Charge of Jury**: OATH. The officer in charge of a jury is not required to take the oath prescribed by section 1910, Revised Statutes, until the arguments of counsel are closed.

5. **Character of Prisoner**: WEIGHT OF EVIDENCE. On a trial for murder, the defendant asked an instruction that in a doubtful case where the accused had established a good character the law presumed that he would not commit the offense charged. This was refused, and the jury told that they might take his character into consideration with all the other facts in determining his guilt or innocence. *Held*, correct.

6. **Continuance**: "POSTPONEMENT." To style an application for a continuance, an application for a postponement, does not change the legal requisites of the affidavit required to support it.

7. **Affidavits Filed on Appeal.** In the Supreme Court certain affi-

davits in relation to a rule of the trial court as to putting cases at the foot of the docket, were filed with the briefs of counsel. *Held*, that they could not be considered.

*Appeal from Mississippi Circuit Court.*—HON. J. D. FOSTER, Judge.

AFFIRMED.

*J. B. Dennis* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

NORTON, J.—When this case was originally submitted to this court for decision the following opinion was rendered, viz:

The defendant was indicted in the circuit court of Mississippi county at its August term, 1881, for murder in the first degree in killing one Belle Lucas. After being duly arraigned he was put upon his trial at the August term, 1882, of said court, and found guilty of murder in the first degree. From this judgment of conviction he has appealed, and his counsel have assigned various grounds of error which will be considered in the order they have been made.

It appears from the record that on Saturday preceding the commencement of the August term, 1882, defend-

1. MOTION FILED IN TERM : TIME : construction of statute.

ant was furnished with a copy of the indictment and that on Monday following, it being the first day of said term, the defendant was arraigned and given till the next day to plead. On the next day he filed his motion to quash the indictment, alleging as grounds therefor that the indictment did not allege that the instrument used in inflicting the mortal wounds upon deceased was a deadly weapon, and that it did not distinctly set forth the time and place of death. This motion was taken up and disposed of against the objection of defendant on the same day it was filed.

It is contended that the court erred in determining

the motion on the same day it was filed, inasmuch as section 3558, Revised Statutes, provides that "motions in a cause filed in term shall be filed at least one day before they may be argued or determined." It is, we think, evident that the section above quoted was intended to give the adverse party to the motion time to consider it so that he should not be taken by surprise, and this has been so held in the case of *Cashman v. Anderson,* 26 Mo. 67. When such adverse party does not claim the benefits of said statute, but consents to the hearing and disposition of a motion on the same day it is filed, we cannot see upon what principle the party filing it can complain and assign the action of the court in considering it as error, especially so, when as it is in this case manifest, that the court made the right ruling in the disposition of it.

The grounds assigned in the motion to quash were not well taken, as the first count of the indictment expressly alleges that the gun used was a deadly weapon, and the time and place of the death of deceased in that, as well as the other two counts, are clearly and distinctly stated and the venue properly laid in all of them.

On Wednesday, the third day of the term, defendant filed an application for a continuance or postponement of the cause till October, it having been previously announced that an adjourned term of court would be held at that time. This application was overruled, and we think properly, because it did not comply with the requirement of section 1884, Revised Statutes, which among other things necessary to be contained in a motion for continuance, provides, that "if it is for an absent witness, the affidavit must give his name and show where he resides, or may be, and the probability of securing his testimony and within what time, and what facts he believes the witness will prove, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured." * * The affidavit, although it discloses

2. CONTINUANCE: requisites of affidavits.

on its face that defendant knew the names of the witnesses living in Mississippi county, who were absent, fails to give the names of any of them. It does give the name of one Lucas and states that he was a non-resident, but does not state where he resided or might be found, nor does it state that he did not know his place of residence, but on the contrary that since he had been informed of his place of residence he had not time to take his deposition; nor is it stated anywhere in the affidavit that he believed the facts to be true that he expected to prove by these witnesses.

Although the affidavit was insufficient because of its non-compliance with the above statute, the prosecuting attorney gave the defendant the benefit of his admission that the witnesses if present would swear to the facts stated and that defendant had borne a good character from his boyhood up to the present trouble.

It also appears that defendant was introduced as a witness, and, after stating that he saw deceased that morn-3. CONDUCT OF ing about seven o'clock with Charles Barnes,
TRIAL: indiscreet
remark of judge. and asked her to get down, saying he wanted to talk with her, he was proceeding to detail a conversation of the most disgusting character, when the judge of the court said, " Stop, witness, I don't intend to have any more such stuff;" whereupon some discussion arose between counsel, and the witness was allowed to proceed, and, again repeating the same vulgar language, the judge said, " Stop, witness, I don't intend to have the jury listen to any more such manufactured stuff;" and thereupon counsel for defendant said he hoped his honor would not comment on the evidence before the jury, and the court at once disclaimed any intention to reflect either upon witness or counsel, and stated that the witness might proceed, and he would instruct the jury as to his evidence. Counsel for defendant then declined to further examine witness and asked permission of the court to withdraw him from the witness stand, which was granted, and the witness withdrawn. With the distinct disclaimer made

by the judge when his attention was called to the remarks made under circumstances calculated to excite them, and the further statement that the witness could proceed and he would instruct the jury as to his evidence, we are unwilling to say that an indiscreet remark made by a judge in the excitement of a trial, which is immediately withdrawn, would be sufficient to justify an interference with a judgment which the evidence supports and when it does not clearly appear that the defendant was prejudiced thereby.

During the progress of the trial and before the case was finally submitted to the jury, the defendant moved the court to discharge the jury because the deputy sheriff having them in charge (who had taken the customary oath for summoning jurors at the opening of the court) was not also sworn as provided in section 1910, Revised Statutes. This request the court refused and also refused to have the deputy sworn till the argument of the cause had closed. It is insisted that this action was erroneous.

4. OFFICER IN CHARGE OF JURY: oath.

The said section provides "that when the argument is concluded the jury may either decide in court or retire for consideration. They may retire under the charge of an officer who, in case of a felony, shall be sworn to keep them together in some private or convenient room or place, and not permit any person to speak or communicate with them, nor do so himself, unless by order of court, or to ask them whether they have agreed upon their verdict; and when they have agreed, he shall return them into court, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations." After the argument was closed, and before the jury retired, the officer having them in charge was sworn in strict compliance with the requirements of said section.

The instructions given on behalf of the State were also excepted to. It is unnecessary to say more of the exceptions taken, than that the instructions were similar to those

given in the case of the *State v. Talbott,* 73 Mo. 347, which were approved.

The defendant also excepted to the refusal of an instruction asked on his behalf, to the effect that in a doubt-5. CHARACTER OF ful case, when the party charged had estab-
PRISONER : weight
of evidence. lished a good character, the law presumed that he would not commit the offense charged. This instruction was properly refused, and the question of character was fairly submitted to the jury in an instruction given by the court of its own motion telling the jury that it was admitted that defendant was of good character from his boyhood up to the date of the alleged homicide, and they might take that fact into consideration, with all the other facts, in determining the question of defendant's guilt or innocence.

Seventeen other instructions were asked by defendant's counsel which put the law applicable to the case in the most favorable light possible for defendant, all of which were given.

The evidence shows that deceased on the morning of the homicide, went to the house of defendant and said to one Barnes that she had been requested by one Thompson, who was very sick and lived about one mile from defendant, to ask him, Barnes, to go over and see Thompson; that Barnes and defendant were at breakfast, that defendant got up, put on his boots, took his double-barreled shotgun and shot-pouch, and walked away in the direction of Thompson's; that Barnes got his horse and started for Thompson's with deceased riding behind; that they overtook defendant, who asked deceased to get down, saying that he wanted to talk with her on business; that deceased got off the horse and Barnes rode on, and deceased and defendant started on a path diverging from the road traveled by Barnes; that Barnes had gone about a half mile, riding briskly as he states, when he heard a gun fire and saw the smoke where the body of deceased was soon after found, with a gun-shot wound and her skull broken, a few

feet from the path and about three hundred yards from where they left Barnes. A double-barreled shot-gun detached from the breach with one barrel recently discharged was found lying near the body of deceased, which was identified as the gun of defendant. Defendant was seen soon afterwards with his shot-pouch on but without his gun. After the homicide defendant left the neighborhood.

After a careful examination of the whole record we find no error authorizing an interference with the judgment, and it is hereby affirmed with the concurrence of all the judges.

After the above opinion was delivered a motion for rehearing was filed and granted for the reason alleged in CONTINUANCE: ruling affirmed on rehearing. the motion that the opinion was in conflict with the case of *State v. Hickman*, 75 Mo. 416, and to which the attention of the court had been called, but was overlooked. This point was urged by counsel with commendable zeal in the brief filed on a re-argument of the case, but we fail to perceive that the doctrine of the *Hickman case* was in any manner assailed in the opinion delivered, but on the contrary we think it is in strict harmony with it. In the case of the *State v. Hickman*, the affidavit for continuance was treated by the court as being in all respects sufficient to authorize a continuance, and the action of the trial court upon the admission by the State that the absent witnesses would swear if present to the statements made in the affidavit, in overruling the application, was held to be erroneous on the ground that the subpoena for the witnesses named in the application had not been returned, so that an attachment could not issue for them, to which it was held defendant on their return would have been entitled, before being compelled to go to trial. In discussing the subject Judge HOUGH, who delivered the opinion, observed: "that we have given the section its true scope is quite manifest when we consider that it was obviously intended to prevent a continuance of the cause, which, but for this section, it

would be the duty of the court to grant. If the defendant failed to show, in his application for a continuance, a reasonable and proper degree of diligence, by the use of the process of the court, and otherwise to procure the attendance of his witnesses, he would be compelled to go to trial notwithstanding the absence of his witnesses, and without any admission on the part of the State as to what they would swear to if present. It is only when a good ground for a continuance is shown that the admission provided for in this section can be made and the trial proceed without the consent of defendant."

In the case we have in hand the application for continuance does not comply with the statute, and we are all agreed that it is insufficient to have made it the duty of the court to grant it; and in such case, in the language of the court in the *Hickman case*, the " defendant would be compelled to go to trial notwithstanding the absence of his witnesses and without admission on the part of the State as to what they would swear to if present." Notwithstanding the insufficiency of defendant's application for a continuance, and notwithstanding the State, according to the above ruling, could have forced him to trial without admitting anything stated in the application, the State not only admitted that the absent witnesses, for whom subpœnas had been issued, would swear if present that defendant was of good character, but admitted it as a fact, that defendant had borne a good character from his boyhood up to the time that he was charged with the crime for which he was indicted. So that defendant had the benefit of this admission to which, under the *Hickman case*, he was not entitled.

It was further held in the *Hickman case* that "process for defendant's witnesses having been seasonably issued, we think the court erred in compelling him to go to trial before the same was returned, there being nothing in the application for a continuance, or in the record before us,

indicating that the subpœnas had not issued in good faith or that the same could not be served."

In the case in hand the evidence of the want of good faith appears both in the application and in the record before us. The witnesses for whom the unreturned subpœnas were issued resided in Mississippi county when the trial was had, and they were wanted to prove defendant's good character, yet the name of no one of them was given, (which is expressly required by the statute,) whereby the State was deprived of the power to have them called to ascertain whether or not they or any of them were in attendance. Every witness for whom the subpœnas had been issued may at the time of the application have been either in the court room or within the call of the sheriff, and by his failure to give their names in the affidavit, he put it out of the power of the court to ascertain the fact. That some of the witnesses wanted were present, and a sufficient number to establish the fact for which they were wanted, may be presumed from the fact disclosed by the record, that on the trial two of the oldest citizens of the county, one of whom had lived there fifty-four years, and the other thirty-five years, were introduced by defendant and testified that he had always borne a good character for peace and integrity. The other witness whose absence was also a ground for continuance was wanted for the purpose, as stated in the affidavit, to prove an *alibi*. The record before us shows that defendant admitted by his sworn statement that he was with the deceased on the morning and about the time the evidence shows her to have been killed.

The application and affidavit of defendant has been variously named by counsel as a motion to put at foot of docket, as an application to postpone, and to continue the cause. The application characterizes itself. Section 1841, Revised Statutes, provides that " all indictments shall be tried at the term at which the indictment is found, if the defendant is in custody or appears at such term, or at the first term at which defendant

6. CONTINUANCE: "postponement."

appears, unless the case is continued for cause." So that under this section, when defendant's case was called it was the duty of the court to try it unless continued for cause, and when such continuance is applied for, section 1884 specifies how the application shall be made and what it shall contain as a cause for the continuance, and to entitle the party to such continuance he must comply with its requirements. The fact that the application is styled an application for postponement, makes it none the less an application for continuance, since these terms may be used interchangeably as meaning the same thing, and they are so defined by the following authorities: 1 Bur. Law Dic., 366; 1 Abbot Law Dic., 277.

The affidavit and counter-affidavit, in relation to rule of court in putting cases at foot of docket, filed with briefs 7. AFFIDAVITS of counsel, not being a part of the record FILED ON APPEAL. cannot be considered by us.

Judgment affirmed in which all concur, except Hough and Henry, JJ., who dissent.