## THE STATE v. L. S. FLANNERY, Appellant.

### Division Two, February 23, 1915.

1. **FELONY: Preliminary Examination: Complaint: Error in Name.** An accused is not prejudiced by a mistake found in the complaint in the name of the person he is charged with having feloniously killed, and the complaint being in every other respect sufficient to identify the crime, he cannot, after having waived a preliminary examination, be heard to contend that no such examination was accorded him.

2. **COMPLAINT:** Sufficiency: Judicial Power. A preliminary examination before a justice upon a complaint charging a felony is not an exercise of judicial power and not such a criminal prosecution as is authorized by the Constitution. The sufficiency of the complaint filed before the justice is not to be measured by the rules in regard to indictments or informations, but a complaint is sufficient which states the substance of the felony, the time and place of its commission and the name of the accused.

> *Held*, by FARIS, J., concurring, that defendant by waiving a preliminary examination waived the mistake in the complaint as to the name of the person charged to have been killed. By waiving such examination an accused waives all that the justice is required to find, namely, (1) that a felony has been committed and (2) that there is probable cause to believe accused is guilty of its commission.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*J. L. Bess* and *Green & Green* for appellant.

Before defendant could be charged by information with a felony and be convicted therefor, he was entitled to the security of a preliminary examination before some justice of the peace in the county where the offense is alleged to have been committed. Laws 1913, p. 225. The information charging defendant with a felony and on which defendant was convicted, was unwarranted and without authority of law, and upon the motion of defendant and the evidence introduced in support of such motion, the information should have been quashed. State v. McKee, 212 Mo. 148; Ex parte Buckley, 215 Mo. 93. No information charging a felony can be filed in the circuit court, until complaint is made in writing and upon oath to some magistrate in the county where the offense is alleged to have been committed, setting forth that a felony has been committed. Sec. 5020, R. S. 1909. One of the purposes of the law is to accord to persons charged

with felonies a preliminary examination to the end that groundless or vindictive prosecutions might not be continued for any length of time. State v. Sassaman, 214 Mo. 695. "It was intended by the law to accord the accused the security of a preliminary examination before he should be charged by information for a capital offense" (now any felony). State v. Gieseke, 209 Mo. 339. The complaint filed before the justice of the peace, charges the defendant with a misdemeanor, and such charge is vague, indefinite, uncertain and incomplete, even as a misdemeanor charge. A justice of the peace cannot hold a preliminary examination and bind a party except for a felony. Therefore, the misdemeanor charge still stands before the justice, against the defendant. Laws 1913, p. 225.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

WALKER, J.—An information filed by the prosecuting attorney of Howell county charged the defendant with murder in the second degree in having struck with his fist and killed Olin McConnell. Upon a trial the defendant was convicted of manslaughter in the fourth degree and sentenced to two years' imprisonment in the penitentiary. He appealed from this judgment, and applied for and was granted a stay of execution upon giving a bail bond, which was approved by the trial court.

The defendant and the deceased, both young men, boarded with a family named Summers in West Plains. There were a number of other boarders, and on the day of the assault by the defendant which resulted in the death of the deceased the two had some hot words at the dinner-table growing out of a casual remark made by Mr. Summers, the landlord, that he had read that morning of a threatened strike of a large number of railway engineers.

Defendant and the deceased bandied words with each other in a sarcastic vein as to what each thought would be the result of the strike until remonstrated with by Mr. Summers and his daughter.

Defendant finished his meal and went out and sat down on the front porch in company with Dr. Ballenger, another boarder, saying as he came out that "this was the second time that fellow (meaning deceased) had butted into him and that he did not have to stand it if he was a preacher; that he might backslide a little, but it would not hurt him to do that." Ten or fifteen minutes later the deceased, who, upon leaving the table, had gone out at the back door, came around the house softly humming a tune, and as he reached the end of the porch said pleasantly to the doctor, "Are you going up town to get your mail?" Ballenger replied, "No, it is a little early yet; I don't believe I will go." The defendant, who had not been addressed, said, "I will go with you if you will repeat what you said at the table." Deceased said, "What did I say?" Defendant replied, "You insulted me." To which the deceased replied, "Well, if I did I am sorry and I will apologize." The defendant in the meantime had risen and walked down in front of the deceased, who was standing on the walk, saying as he reached him, "This makes twice you have done that. If you will just step out into the street with me I will whip you until your friends won't know you." To this the deceased replied, "No, I won't go; I don't want any trouble. If I have hurt your feelings I am sorry and I am willing to apologize." The deceased then started down the walk towards the front gate, the defendant keeping in front of him. As they went the doctor heard the deceased say, "I have too much respect for this home to have trouble and I don't want to have any trouble." Defendant replied, "Come back into the alley and there won't be anybody know anything about it." Deceased then stepped aside off of the sidewalk and said,

"No, I won't go with you anywhere." This was the last coherent remark the deceased made. Defendant then caught the deceased by the lapel or collar of his coat and swinging him around facing defendant said, "You dirty, low-down cur, I am going to whip you here." At this defendant struck the deceased with his fist on the temple or side of the head, felling him to the ground. His head struck the edge of the cement or concrete walk, and Dr. Ballenger, who until then had remained sitting on the porch, rushed down to the defendant, fearing that he would again strike the deceased, and said, "For God's sake, don't do this." The defendant did not repeat the assault, but asked the doctor if he thought the deceased was hurt. The doctor said he could not tell. They lifted the body off of the walk and laid it on the grass. The deceased during this time was writhing in paroxysms of pain and muttering names said to have been those of his brother and his affianced, and catching convulsively at his head, exclaimed at intervals, "Oh mother! Oh my head!" or words of kindred import. He never regained consciousness, but died that night between seven and eight o'clock. His death was caused by a hemorrhage at the base of the brain, caused either directly by the blow inflicted by defendant or indirectly by the deceased striking his head when falling on the cement walk in consequence of defendant's blow.

The deceased was a small man, about five feet and four or five inches in height, weighing 130 or 135 pounds. The defendant was six feet in height and testified that he weighed from 160 to 175 pounds. After striking the deceased the defendant went before a justice of the peace and attempted to enter a plea of guilty to a common assault, but his plea was not permitted to be made.

The foregoing presents the material facts testified to by witnesses for the State. Defendant testified in his own behalf. His testimony was utterly at

variance with that of other witnesses, except that of two women who testified for the defense. One of these was a Mrs. Lillian Simpson, who was shown to have been sitting with her back to where the defendant and deceased were standing when the fatal blow was struck and who stated immediately thereafter that she did not know anything of the affair and could not testify in regard thereto; nevertheless, she went on the stand and testified affirmatively and in detail that the deceased was the aggressor. The other was a young woman who was at some distance from where the two men were standing when the blow was struck, whose testimony tended to sustain defendant's statements. The jury gave no credence, and properly so under all of the facts, to the testimony of these three witnesses, and time and space need not be occupied in its discussion, there being ample evidence to sustain the verdict.

The killing occurred June 4, 1914. The constable of the township in which West Plains is located went before a justice of the peace and filed a complaint charging the defendant with having killed "Olin Connell" by striking him on the head with his fist. Defendant's contention with regard to the sufficiency of this complaint renders the justice's docket entries in regard thereto material. Omitting caption, signatures, jurat, certificate as to genuineness and the circuit clerk's filing mark, all of which are not questioned, these entries are as follows:

"On the 4th day of June, A. D. 1914, before Geo. Halstead, Justice of the Peace within and for the county aforesaid, comes Ben Hollingshad and files complaint against defendant and on his oath says on or about the 4th day of June, A. D. 1914, in Howell county the defendant did then and there willfully and unlawfully and feloniously kill Olin Connell by striking him, the said Connell on the head with his fist.

"Same day I issued warrant for the apprehension of defendant and delivered the same to Ben Hollings-had, constable.

"June 4, 1914, warrant returned executed by bringing before me at my office in Howell township, the body of defendant, as commanded.

"June 4, 1914, comes now the defendant who having seen and heard read the affidavit filed, says that he could not be ready for a hearing until June 15th, hearing set for June 15th and bond fixed at $2000, which was furnished with (name of principal and sureties), and approved by the court.

"June 9, 1914, comes defendant by attorneys, and informs the court that he waives the preliminary hearing heretofore set forth the 15th of June, and the court fixes his bond for $2000 for his appearance at the next term of circuit court, with (name of principal and sureties) as securities.

"Which bond was approved by the court and the same certified to the clerk of the circuit court."

On the 22nd day of June, 1914, the prosecuting attorney of Howell county filed an information charging the defendant with murder in the second degree in having struck and killed Olin McConnell. Motions to quash were filed, assailing the information on grounds *dehors* the charge itself, in that no complaint had been filed precedent to the filing of the information charging a felony and that the name of the deceased was not properly set forth and that by reason of such defects defendant had not been accorded the right of a preliminary examination as required by section 5056, Revised Statutes 1909, as amended by Laws of Missouri 1913, p. 225. The overruling of the motions to quash is contended by the defendant to have been reversible error.

*The Complaint.*—Precedent to the filing of an information by a circuit or prosecuting attorney charging any person with a felony, the person charged shall

be accorded the right of a preliminary examination (section 5056, as amended, supra). To authorize an accused to demand this right complaint must have been made against him in writing under oath before a justice of the peace of the county, setting forth that a felony has been committed and naming the accused, whereupon the justice of the peace is required to issue a warrant for the apprehension of the person charged. Upon being apprehended the accused may demand or waive a preliminary examination. This court, in State v. Jeffries, 210 Mo. l. c. 320, and in State v. Sassaman, 214 Mo. 695, has fully defined the object and purpose of a preliminary examination, to the effect that the right to same was accorded to obviate the possibility of groundless or vindictive prosecutions which the Legislature evidently deemed might otherwise occur where informations were filed and the deliberations of a grand jury dispensed with.

The authority thus granted was also intended to prevent suspected persons from escaping and to secure their presence for a trial if subsequently indicted or an information was filed against them. The examination, therefore, was in no sense intended as a trial in which the guilt or innocence of the accused was finally determined, but simply that the possibility of an abuse of power by the prosecutor might be prevented, and if the facts adduced satisfied the justice that an offense had been committed and there was probable cause to believe the accused was guilty, his detention was authorized until an information or indictment be found. This being the purpose, it follows that the complaint upon which the examination is based need not be framed with the same particularity as an indictment or information, but will be sufficient if it states the offense in substance so that the accused may know the nature of the charge preferred against him.

There are other cogent reasons why this complaint need not be as definite and certain as an information or indictment.

Ordinarily an arrest cannot be made without a warrant, and a justice has no authority to issue a warrant unless a complaint has been made before him. This complaint may be made by anyone cognizant of the facts, and the requirements of the statute (Sec. 5020, R. S. 1909) are that it shall be in writing and upon oath. Oftentimes it is of necessity made by laymen, who are not only unfamiliar with the terminology of the law, but wholly ignorant of criminal pleading. To hold that a complaint authorized to be filed under such conditions should conform to the rigid rules of criminal procedure would be to destroy the purpose of the statute, which, in addition to the objects stated, provides a way by which the defendant may be legally arrested and, if probable cause is found to exist, detained until an indictment or information may be preferred against him. His legal arrest is, therefore, of equal importance and of more effective force in the administration of the criminal law than the filing of the complaint upon which the warrant of arrest is based. Having accomplished this purpose, the defects and informalities of the complaint, unless it fails utterly to state the substance of the offense with which the accused is charged, should not be held sufficient to invalidate the subsequent proceedings.

In the instant case the complaint charges, not perhaps with the precision and formality prescribed in the books, but with enough certainty to leave no doubt as to the time, place and nature of the offense, that "defendant did then and there willfully, unlawfully and feloniously kill Olin Connell by striking him, the said Connell on the head with his fist." This averment suffices to charge manslaughter in the fourth degree. [3 Chit. Cr. L. 783; 3 Bish. New Cr. Proc. (2 Ed.), secs. 501-502; Bish. Dir. & Forms (2 Ed.), sec. 520;

Kelly's Cr. L. (3 Ed.), sec. 503.] . The complaint therefore charged a felony and, aided by the warrant, effected the arrest of the accused, and the requirements of the law of its creation were satisfied. This being true, in what manner was the accused prejudiced by the fact that he was alleged to have killed "Olin Connell" instead of "Olin McConnell?"

Defendant knew the nature of the charge preferred against him, the time when and the place where it was alleged to have been committed. Possessed of this knowledge, in what respect could he have suffered injury if the complaint had charged him with having struck and killed "John Smith" instead of . Olin McConnell? The purpose of the complaint and the issuance of the warrant thereon, as we have stated, was to accord the defendant a right to an examination and to prevent his escape. The complaint was filed on the day of the commission of the crime, and defendant, instead of availing himself of the right which the law accorded him and at that time raising any and all questions he deemed proper as to the alleged defects of the charge, asked that the examination be postponed. This was done, and before the day appointed for the hearing he waived an examination and entered into a recognizance for his appearance at the circuit court. Under these circumstances, after an information has been filed against him based upon the charge made in the complaint, his motion to quash the information upon the specious plea that defendant had not been accorded a preliminary hearing was, by the trial court, properly overruled. It has been held elsewhere, and we approve of the ruling, that a defendant to avail himself of defects in a complaint such as is here being considered, should object thereto before the examination. [People v. Smith, 1 Cal. 9.]

Courts should not lend themselves to subterfuges as defenses to criminal prosecutions where not even an intimation of prejudice is made. The time has

passed, not only in this State but elsewhere, when pure technicalities, in the absence of evidence of well defined injury to the accused, will be permitted to obstruct the enforcement of the criminal law.

In State ex rel. v. Nast, 209 Mo. 708, 728, this court held that a complaint charging a felony before a justice under which a preliminary examination was authorized, did not involve an exercise of judicial power—that while justices, within the well defined limits of their jurisdiction, perform the functions and exercise the powers of courts, they do not as examining magistrates act judicially but ministerially. [1 Bish. New Cr. Pr. (2 Ed.), sec. 237; Nast case, supra, p. 730.] We so held in an earlier case (Ex parte Bedard, 106 Mo. 616), and a like ruling was made by the St. Louis Court of Appeals in State v. Hoeffner, 44 Mo. App. 543.

Further than this, the Constitution of this State (section 12, article 2) provides that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information." If, therefore, a preliminary examination before a justice upon a complaint charging a felony is not an exercise of judicial power and not such a criminal prosecution as is authorized by the Constitution, the sufficiency of such a complaint should not be measured by the rules in regard to indictments and informations, and this could not well be otherwise when the purpose of such complaints is kept in view.

We are, therefore, of the opinion that a complaint is sufficient which states the substance of the felony, the time and place of its commission and the name of the accused. Under a reasonable interpretation of the statute this is all that should be required.

The alleged insufficiency of the complaint whereby it is contended that the defendant was not accorded a preliminary examination is the only error assigned by the able and industrious counsel for the defense.

We hold it without merit, which results in an affirmance of this judgment, and it is so ordered. *Faris, P. J.*, concurs in a separate opinion, in which *Brown, J.*, joins. *Brown, J.*, concurs in result.

FARIS, P. J. (concurring).—I concur in affirming this case for the reason that I am of opinion that defendant by waiving a preliminary examination waived the error in the complaint as to the name of the person alleged to have been killed by defendant.

The situation presents a case of a technical error; a sort of pit for the feet of the unlearned digged by the Legislature—a pit by the way which has been biennially for years on end, alternately dug by one Legislature and filled up by another. In passing we recall appreciatively the ingenuousness and candor of defendant's learned counsel in admitting in oral argument that the preliminary hearing was waived with the deliberate intention thereby to inject error into the case upon its trial below.

If Connell and McConnell are not *idem sonans*, and obviously they are not (Myers v. DeLisle, 259 Mo. 506; 29 Cyc. 276 and cases cited), I see no safe ground upon which to base an affirmance except that of waiver.

Let me briefly array the facts: Defendant appeared June 4, 1914, and heard and had read to him, the record says, the complaint now attacked as rendering the information based on it quashable; he then begged the indulgence of a continuance for eleven days so as to prepare for the preliminary examination, and gave bond that he would appear thereat; on June 15th he again appeared, waived the preliminary examination and suffered his bond to be fixed at $2000, for his appearance before the circuit court to answer any indictment or information which might be preferred against him; he gave this bond and did appear, and on

his appearance in the circuit court objected by his motion to quash, for the very first time to the error in the complaint which wrongly recited the name of deceased. I think on these facts he waived the error in the complaint. Likewise I think, but am not called on to decide, that if he had gone into a preliminary examination on the complaint as it stood, he would clearly have been entitled to his discharge thereon.

It is manifest I think, that if a preliminary examination may be waived, and the statute specifically so provides (Laws 1913, p. 225), then it follows that the defendant in exercising his statutory privilege to waive the preliminary examination, likewise must be held to have waived all irregularities in matters connected with such examination. Even a waiver of the right to a preliminary examination will be implied, when no such waiver in fact occurred, when the accused gave bail for his appearance at the next term of court in a case wherein no complaint whatever had been filed against him (Cunningham v. State, 116 Ind. 433), or when he suffers himself to be bound over for trial without objection and after he, in fact, had pleaded not guilty. [State v. Ritty, 23 Ohio St. 562.] Is not the absence of any complaint whatever a more serious defect than a mere error of misnomer in a complaint otherwise good?

This state of the law considered, in analogous cases which are stronger in some aspects than the condition confronting us in the instant case, I feel no manner of doubt that defendant may not deliberately ambush the trial court as was done here, but that he ought to be held to have waived any error and imperfection in the complaint such as a minor mistake in the name of the deceased.

I think it is to be deduced as a rule in the absence of a statute, that in the final analysis, a preliminary examination is, and has ever been for the benefit of accused; that he may not be unjustly and without proof,

or probable cause, incarcerated or forced to find bail. This does not militate in any way against the view taken in State v. Jeffries, 210 Mo. l. c. 320, where it was said: "The preliminary examination after all is but an expedient to prevent a suspected person from escaping and to preserve the evidence and keep the witnesses within the control of the State." While all this is so, yet ever since prosecutions for felonies have been permitted by information, it in a way cuts in behind the latter view. For though I am mindful of the provisions as to putting witnesses upon recognizance, this could have been reached by some other statutory provision; while the filing of an information against the accused would immediately put him in jail or force him to his writ of *habeas corpus*, but for the right he has to have accorded him a preliminary examination. The examining magistrate is not expected, or empowered, to determine the guilt or innocence of the accused, or to nicely or irrevocably determine the precise offense of which he is guilty. The statute says: "If it appear that *a felony* has been committed" (not *the felony*), "and that there is probable cause to believe the prisoner guilty thereof" (Sec. 5036, R. S. 1909), he may let him to bail if the offense be bailable (Sec. 5039, R. S. 1909), provided the preliminary examination is not to be had when accused sees fit to waive it. [Laws 1913, p. 225, supra.]

What does he waive? Clearly, I think he waives that which the magistrate was required to find, viz., that a felony had been committed, and that there was probable cause to believe the accused committed it. And by a waiver of such examination accused in effect admits, for all and singular but only for the legal purposes, objects and intents of the preliminary examination, all that such magistrate was required to find, viz., that a crime has been committed and there is probable cause to believe that accused is guilty of its commission. Thereafter it is left to the prosecuting attorney

to determine the exact legal name and nature of the offense committed.   [State v. Anderson, 252 Mo. 83.] The law then, this view considered, ought not to be, neither do I think it is, that for every small error of a magistrate unlearned in the extreme niceties of the law, prosecutions must be halted after informations are filed and the case sent back for a technically correct preliminary hearing.   [State v. Jeffries, supra; State v. Anderson, supra.]   Going a little further in analogy: If defendant had pleaded guilty of manslaughter, for that, as the information charged he had killed one Olin Connell, when in fact he had killed Olin McConnell, would relief be afforded him here upon appeal upon the bare point of misnomer of deceased, the information being otherwise sufficient? I think not.   So I vote to concur upon the point of waiver alone.