THE STATE v. CLAUDE ANCELL, Appellant.—62 S. W. (2d) 443.

Division Two, June 24, 1933.

28

*Roy McKittrick*, Attorney-General, and *Carl C. Abington*, Assistant Attorney-General, for respondent.

COOLEY, C.—By information filed in the Circuit Court of Dunklin County the defendant, Claude Ancell, was charged with murder in the first degree for having shot and killed one John Scarborough in said county on March 15, 1931. Upon his application he was granted a change of venue, the case being sent to the Circuit Court of Stoddard County where it was tried on December 18 and 19, 1931. Defendant was convicted of manslaughter, his punishment being assessed by the jury at six years' imprisonment in the penitentiary. After unavailing motion for new trial he was duly sentenced in accordance with the verdict and has appealed.

At the time of the homicide defendant and Scarborough and eight or ten other men were congregated in a small one-room house belonging to defendant where a crap game was in progress. It appears that the house in question was maintained as a gambling resort. At least gambling was of frequent occurrence there and on the day of the homicide most or all of the men present were there for that purpose and at the time of the shooting most of them were gathered around a small table participating in the game. Scarborough was noticeably under the influence of intoxicating liquor, one witness graphically describing his condition as being "drunker than he was sober," and was boisterous and overbearing in his conduct. When he first entered the room he roughly elbowed his way through the group of men present, pushing defendant aside and as some of the evidence indicated, causing him to fall upon a bed in a corner of the room. No conflict or quarrel ensued, however, at that time. The shooting occurred an hour or so later. At the time he was shot Scarborough was standing at the southeast corner of the table, which was about six feet long and three or four feet wide, and defendant was at the north end. The evidence tended to show that two or three times during the course of the game while Scarborough was participating therein he had demanded money, each time fifty cents, which he claimed to have won, and had some argument, though no heated altercation, with two or three of the men present in regard thereto, but not with defendant, and that on one such occasion defendant had told the man who was "banking the game" to give Scarborough the fifty cents he was then demanding. This was done and the game proceeded, apparently without serious friction among the participants.

The State's evidence tended to show that just before the shooting the dice had again been rolled out upon the table and Scarborough again claimed to have won fifty cents; that he leaned over the table with his hands covering the dice and said: "Nobody will shoot any

more until I get my fifty cents;" and that thereupon, without other provocation and without speaking to Scarborough, defendant drew his pistol and shot him, killing him instantly.

Defendant claimed self-defense. He testified ·that when Scarborough came into the house on that day he was intoxicated; that he ran against him (defendant), knocking him over onto the bed; that later when he protested against certain offensive acts of Scarborough's the latter said to him: "You go to hell, you big son-of-a-bitch. I am fixed and plenty able to take care of myself and I don't need none of your advice," adding that he generally took what he wanted and "I have got my cannon and when I start shooting I don't know when to quit:" that when the dice were rolled the last time Scarborough tried to take the money and he, defendant, said to him: "John, you are in the wrong, you ought not to take that money away from the boy," and that Scarborough "turned on me and rammed his hand in the bib of his overalls and said: "You big son-of-a-bitch, I will have it or I will get you;" and that thereupon he, defendant, believing his life in danger, shot Scarborough. Several witnesses corroborated defendant in his testimony that just prior to the firing of the shot Scarborough made a movement toward his pocket or the bib of his overalls. Others testified in substance that no such movement was made. Defendant also testified that on two prior occasions Scarborough had threatened his life and made hostile demonstrations . against him. Other evidence tended to show that Scarborough had threatened defendant on those occasions. The evidence also showed and the State conceded that Scarborough had the reputation of being turbulent and violent when under the influence of liquor, as he admittedly was on the occasion in question. No weapon was found upon deceased. The foregoing is a sufficient outline of the evidence. No question is or can be made that the State did not make a submissible case or of the sufficiency of the evidence to sustain the verdict of guilty.

I. After taking his change of venue the defendant filed in the Circuit Court of Stoddard County, where the case had been sent, a plea in abatement by which he challenged at great length and on several grounds the validity of the preliminary examination which had been accorded him before the filing of the information. The court overruled the plea. Defendant has filed no brief in this court. We look to his motion for new trial for the alleged errors of which he complains. In said motion he thus stated the grounds on which he claims the court erred in overruling his plea in abatement:

"(a) For that the Information charged defendant with the crime of Murder in the First Degree for the killing of John Scarborough, upon which charge the defendant was accorded a preliminary hear-

ing and was not held to trial in Circuit Court by the examining magistrate on charge of murder in the first degree but who found only probable cause for, and held the defendant to answer only the charge of Murder in the Second Degree; all in contravention of the laws of the State of Missouri made and provided: [State ex rel. v. Cooley, 321 Mo. 786, 12 S. W. (2d) 466.]

"(b) For that the pretended Certificate to the transcript of the examining magistrate is not a copy of the docket entry made by said examining magistrate in said cause at the preliminary trial.

"(c) For that no docket entry of said preliminary examination was made and entered therein by said examining magistrate during his term of office, but that the same was made after the term of said examining magistrate had expired and after he had ceased to be a magistrate.

"(d) For that the testimony of the witnesses given at the preliminary trial in said cause was not signed, subscribed nor sworn to by said witnesses before said examining magistrate who presided at said preliminary trial, nor certified to by him, as such, as is required by law.

"(e) Because the trial (court?) erred in overruling the Plea in Abatement filed by defendant standing charged with Murder in the first degree, upon the ground invoked by the Court, to-wit: A rule of court printed in the printed Bar docket for December Term, 1931, of the Stoddard County Circuit Court providing as follows: 'Motions, demurrers and other matters before the Court,' will be heard on Friday, Dec. 11th, 1931, as an unjust deprivation of the legal rights of such defendant in a criminal case under the laws of the State of Missouri."

In support of his plea in abatement defendant introduced the deposition of S. A. Shields, justice of the peace before whom the preliminary examination had been held, which showed in substance the following: That as such justice he held a preliminary examination of defendant on March 26, 1931, "for the alleged killing of John Scarborough," and on April 1, 1931, certified to the clerk of the circuit court a transcript of the proceedings had before him; that he made no entries of the proceedings in his docket at the time, but later, on April 20, 1931, some ten days after his term of office had expired and he had been succeeded in office by one W. A. Perry, he did write a docket entry, the only entry appearing in the docket; that he thought he had ceased to be a justice of the peace at the time he wrote the entry, and that Mr. Perry was then the justice; that the witnesses who had testified at the preliminary did not sign their respective testimonies "contained in the transcript filed in this case" before him and that he did not make or file any certificate that the testimony contained in the transcript was that of the witnesses who

had testified before him. The defendant also introduced in evidence the verified complaint charging murder in the first degree which had been filed with Justice Shields on March 16, and upon which the preliminary was held, and the magistrate's duly certified "transcript" of his proceedings, dated April 1, 1931, which sufficiently shows the filing of the complaint, the issuance and return of a warrant for defendant's arrest, the holding of a preliminary examination at which defendant appeared in person and by counsel and at which witnesses were heard on both sides, the finding that a "crime" had been committed and that there was probable cause to believe that defendant committed it, that the justice ordered that the defendant be bound over to the July Term of the circuit court "on the charge of second degree murder" and fixing his bond at $4000 for his appearance in circuit court, and that such bond was given by defendant and approved by the justice. The justice certifies "the foregoing to be a true and complete transcript of all proceedings had before me in the above entitled cause, together with all costs accrued thereon, as the same appears of record in my office. And that all the papers in the case are hereto attached."

(a) Appellant's contention that the prosecution should have been abated because he had not been held by the examining magistrate to answer the charge of murder in the first degree contained in the information subsequently filed cannot be sustained. In State ex rel. McCutchan v. Cooley, 321 Mo. 786, 12 S. W. (2d) 466, referred to by defendant in his motion for new trial, it was held by this court en banc that the prosecuting attorney was without authority to file an information for felony until there had been a finding by a magistrate on preliminary examination "that a felony has been committed and that there is probable cause to believe the prisoner guilty thereof," quoting the language of the statute, now Section 3483, Revised Statutes 1929. In that case the defendant had been accorded a preliminary and had been discharged by the magistrate. In the instant case he was not discharged. True, he was not held to answer a charge of murder in the first degree. But the magistrate found that a "crime" had been committed and from the transcript of his proceedings as a whole it clearly appears the crime meant was murder, a felony, and that there was probable cause to believe defendant guilty thereof. That finding meets the requirement of the statute. "The examining magistrate is not expected, or empowered, to determine the guilt or innocence of the accused, or to nicely or irrevocably determine the precise offense of which he is guilty." [State v. Flannery. 263 Mo. 579, 592, 173 S. W. 1053.] The separate opinion of FARIS and BROWN, JJ., in the Flannery case, in which the above quoted language occurs, was criticised on another point in State v. Nichols, 330 Mo. 114, 49 S. W. (2d) 14, but we do not un-

derstand it to have been questioned on this point. The reasoning of the principal opinion in that case, by WALKER, J., leads to the same conclusion. [See, also, State v. Bauer et al., 321 Mo. 603, 12 S. W. (2d) 57; State v. Jeffries, 210 Mo. 302, 320, 321, 109 S. W. 614.] The complaint filed with the justice in this case charged murder in the first degree, which charge included the lower degrees of felonious homicide, to-wit, murder in the second degree and manslaughter. The justice found that the felonious act charged, in other words a felony charged in the complaint, had been committed. It was not incumbent upon him to determine the precise degree of the crime found to have been committed nor, in our opinion, could his attempted determination thereof preclude the prosecuting attorney from filing an information charging the higher degree.

Moreover, the information charging murder in the first degree included the charge of murder in the second degree, on which defendant had been bound over, and that of manslaughter, of which he was convicted. Had the information charged murder in the second degree it would have included manslaughter just the same, the difference between a charge of murder in the first degree and one of murder in the second degree being that in the former but not in the latter the element of deliberation must be alleged. Under either the accused may be convicted of manslaughter if the evidence so warrants. So that in any event defendant had a preliminary examination and was bound over to answer the charge on which he was convicted.

(b) and (c) So far as we have been able to find, the question involved in these propositions has not heretofore been decided by this court. Preliminary examinations are governed by statute and we must look to our statutes for the defendant's right thereto and for the procedure.

The transcript of proceedings which Justice Shields certified to the circuit clerk's office is not a copy or transcript of the docket entry the justice testified he wrote on April 20 and which he said was the only entry appearing in his docket. Said docket entry, though short and informal, is, we think, sufficient to show a valid preliminary examination held on March 26, 1931. No transcript of that record appears to have been certified to the circuit clerk. In his certificate to his transcript of the proceedings had before him, dated April 1, which he filed with the circuit clerk, Justice Shields certifies that the same is a true and complete transcript of the proceedings had before him "as the same appears of record in my office," from which it might perhaps be assumed that he had made a record of the proceedings in some book or record other than his "criminal docket," the book in which the entry written on April 20 appeared. But since he testified that said entry was "the only docket entry he had in

the case,'' and no effort was made by the State to show any other record entry it seems fairly clear that there was no other, and we shall so treat the situation.

By Section 2177, Revised Statutes 1929 (4 Mo. Stat. Ann. p. 2379), a part of Article 3, Chapter 10, relating to justices' courts, it is provided that the justice shall keep a docket in which certain facts in causes before him shall be noted. That and other provisions of that article seem to have application particularly to civil cases. By Section 2313 of Article 5 of the same chapter it is provided that no judgment rendered by a justice of the peace shall be deemed invalid, stayed or in any way affected by reason of the neglect or failure of the justice to enter the same within the time prescribed, etc., or for any other default or negligence of the justice by which neither party shall have been prejudiced.

Turning to the code of criminal procedure we find in Article 4 of Chapter 29, Sections 3414 et seq., Revised Statutes 1929 (4 Mo. Stat. Ann. pp. 3086 et seq.), giving justices of the peace. jurisdiction to try and to determine misdemeanor cases, provisions which clearly contemplate and require that they shall keep dockets of such cases wherein certain facts are required to be noted. See for illustration, Sections 3430, 3433, 3434, 3444, 3451, 3459, 3464. It thus appears that in matters both civil and criminal in which a justice of the peace exercises the functions of a court, with authority to adjudicate controversies and render judgments, he is required by the statute to keep a docket of his proceedings and enter certain facts therein.

In a preliminary examination the examining magistrate does not act in the capacity of a court. He does not determine the question of the guilt or innocence of the accused. His conclusion is in no sense a judgment. [State ex rel. Board of Education v. Nast, 209 Mo. 708, 728 et seq., 108 S. W. 563; State v. Flannery, supra; State v. Nichols, supra.] Although for obvious reasons he ought to keep some record of his proceedings there is not the same cogent reason for requiring it as in cases wherein he acts in a strictly judicial capacity as a court. The statute providing for and prescribing the procedure for preliminary examinations, Article 5, Chapter 29, Sections 3467-3500, Revised Statutes 1929 (4 Mo. Stat. Ann. pp. 3109-3121), contains no specific reference to docket entries or a record to be kept by the examining magistrate except in one Section 3475, wherein it is provided that if a person who has been recognized to appear before him fails to appear the magistrate shall ''record the default,'' which record, with the recognizance, is to be certified to the court having cognizance of the offense charged for appropriate proceedings there for breach of the recognizance.

The section of the statute, Section 3489, particularly in point on

the question under discussion provides that "all examinations and recognizances taken in pursuance of the provisions of this article shall be certified by the magistrate taking the same, and delivered to the clerk of the court in which the offense is cognizable," etc. By Section 3490, if the magistrate fails to certify and return any examination or recognizance as required by Section 3489, he may be compelled by rule and attachment to do so. The statute does not say that he must certify and return a transcript of the record or docket entries of the examination.

Even in a case in which the justice was acting judicially as a court and required to keep docket entries it has been held that the existence of a fact which should have been but was not noted in his docket could be shown by the oral testimony of the justice in support of the judgment. In State v. Hockaday, 98 Mo. 590, 12 S. W. 246, the defendant was prosecuted for an alleged second offense. The prior conviction charged had been in a justice of the peace court. The justice's docket did not show the filing of an information, absent which there could have been no valid judgment of conviction. The justice was permitted to testify that an information had in fact been filed before the defendant's plea of guilty was entered and that he pleaded to the information. This court held that it was competent to prove by the justice that the information had been filed and that it was done prior to the defendant's plea, such testimony not being in *contradiction* of the justice's record, and that his failure to make a docket entry of the filing of the information did not invalidate the judgment. The Hockaday case was inferentially approved in Sutton v. Cole, 155 Mo. 206, 213-214, 55 S. W. 1052. In the latter case the parol evidence offered was held incompetent because it tended to *contradict* the record made by the justice. The court, however, said, 155 Mo. l. c. 213: "If the proceedings before inferior courts are not entered in books, they may be proved by the officers of court," citing 1 Greenleaf on Evidence (14 Ed.), section 513.

In the instant case it is not contended that defendant was not in fact accorded a preliminary examination. His own proof shows that he was and that the magistrate in due time certified the same to the circuit court. There is no contention nor any evidence tending to show that defendant was in any way prejudiced by the failure of the examining magistrate to enter the proceedings in his docket. To hold in such circumstances that the prosecuting attorney was without authority to file and the circuit court to proceed upon an information would be to make such authority and jurisdiction dependent, not upon the fact that the accused had been accorded a proper preliminary examination but upon whether or not the examining magistrate had made sufficient docket entries or record

thereof. We think that neither the statute nor the reason of the thing requires that we so hold.

█ We have said, in substance, that the purpose of preliminary examinations is to prevent suspected persons from escaping, to secure their attendance and that of witnesses at the trial, as well as to safeguard them from groundless and vindictive prosecutions. [State v. Tunnell (Mo.), 296 S. W. 423, 426; State v. Jeffries, supra; State v. Flannery, supra; State v. Langford, 293 Mo. 436, 240 S. W. 167.] These purposes are accomplished when the accused has been accorded a preliminary examination, whether the examining magistrate makes a record of it in his docket or not. Regardless of whether or not the docket entry written by the justice after his term of office had expired can be considered, we are of the opinion that on the facts shown the justice's failure to make docket entries of the proceedings had before him did not invalidate the examination.

█ (d) Testimony of witnesses not signed before examining magistrate. The statute, Section 3480, Revised Statutes 1929, provides that in homicide cases the evidence of the witnesses shall be reduced to writing by the magistrate or under his direction and shall be signed by the witnesses respectively. It is not contended in the plea in abatement nor did the evidence tend to show that the witnesses who testified at the preliminary did not sign their respective depositions. The contention was only that they did not sign them before the magistrate who had heard the testimony. The plea alleges that they were certified and delivered to the clerk of the circuit court by Shields' successor in office but no proof was offered in support of this allegation. The allegations of the plea in abatement do not prove themselves and the proof as to when the depositions were signed and filed with the clerk is inferential rather than positive. Such as it is, gathered partly from the evidence on the plea in abatement and partly from that given at the trial, it indicates that the testimony was taken down in shorthand at the preliminary by consent, express or tacit, of the parties and when transcribed was signed by the witnesses before Shields' successor in office, Mr. Perry, and by the latter filed with the circuit clerk. It seems clear from the whole record that the testimony was in fact signed by the witnesses; and that it was with the transcript in the circuit clerk's office and considered by defendant as a part thereof is shown by questions to his witness Shields on the hearing of his plea in abatement, in which he refers to the testimony of witnesses at the preliminary ''contained in the transcript filed in this case.'' The vagueness of the evidence on this point may be due to the fact that in his plea in abatement defendant alleged that he had been prejudiced in preparing his defense because the depositions of the witnesses given at the preliminary had not been filed or copies thereof furnished him long enough be-

fore the date, July 15, for which the case was first docketed for trial in the Dunklin Circuit Court to give him reasonable time to examine and study them before that date—a complaint which fades out of the picture in light of the fact that the case was not tried for more than five months after that date.

We held in State v. Smith (Mo.), 228 S. W. 1057, that a defendant entitled to a preliminary examination in a homicide case may waive the signing of the testimony by the witnesses, as he might waive the preliminary entirely. In that case the parties agreed that the testimony might be taken down by a stenographer and a copy thereof furnished defendant's attorney. It was held that such agreement was a waiver of the right to have the testimony signed by the witnesses and certified by the magistrate. In the instant case it is fairly inferable from the whole record, as above stated, that defendant consented that the testimony might be taken at the preliminary in shorthand. He knew it would require sometime to transcribe it. Meanwhile the term of office of the justice who had heard the testimony expired and he was succeeded by another. The testimony thus taken in shorthand and later transcribed was in effect reduced to writing under the direction of the magistrate who heard it. It was signed by the witnesses, thus authenticating it as their testimony, in the presence of the magistrate's successor in office and by the latter was transmitted to and filed with the proper officer. Under the circumstances we think there was a substantial compliance with the statute. No contention is made that the testimony was not correctly transcribed or as to the authenticity of the testimony filed in the circuit clerk's office. Both sides made reference to and use of it in the trial. Defendant was in no way prejudiced by the fact that the witnesses' testimony was signed before Shields' successor rather than before him. We rule this point against appellant.

(e) The bar docket of the Stoddard County Circuit Court contained a rule that motions, etc., would be heard on a day therein named. The plea in abatement herein was filed at a later day in the term. We do not understand that the circuit court overruled the plea simply because it was not presented in time to be heard on the day designated for such hearings. At any rate, the court permitted defendant to introduce all the evidence he offered. We have considered the same and decide the questions presented on the merits without considering said court rule. We hold that the plea in abatement was properly overruled.

II. Complaint is made that the court permitted the prosecuting attorney to endorse on the information the name of a witness, Huffine, just before the beginning of the trial. Huffine was one of those present at the time of the homicide. Defendant of course knew

he was there and two or three weeks before the trial had asked him if he, Huffine, had not at that time heard Scarborough make a certain threatening remark to defendant. Huffine testified to nothing except the circumstances attending the shooting, about which many other witnesses testified, and his testimony did not materially differ from that of several others. There is nothing in the record to indicate that defendant could have been any better prepared to meet or contradict Huffine's testimony had the latter's name been indorsed on the information from the beginning. Moreover, when Huffine was called as a witness defendant offered no objection to his testifying. There is no merit in this complaint.

III. It is assigned as error that when the sheriff took charge of the jury during the recess of court for the evening meal on the first day of the trial the court, "over the objection and exception of the defendant," failed to require him to take the statutory oath. The bill of exceptions does not show that defendant objected or excepted to such failure. Moreover, the statute, Section 3683, Revised Statutes 1929, does not require that this special oath be administered to the officer who has the jury in charge until the argument of the case has been concluded. [State v. Underwood, 76 Mo. 630; State v. Armstrong, 167 Mo. 257, 66 S. W. 961.] It is not claimed that the officer was not then properly sworn.

IV. Error is assigned in that the court permitted improper cross-examination of defendant, as follows:

(1) In permitting defendant to be asked on cross-examination if he had not told certain persons that he and Scarborough had always been good friends and had never had any trouble nor had Scarborough ever made any threats against him and that he did not know why Scarborough acted as he did at the time of the killing, to which questions he had answered that he did not remember making the statements; and (2), if it was "his game" that was being operated on the day of the killing, to which he had answered in the affirmative.

(1) Defendant had testified on direct examination that on two prior occasions Scarborough had threatened him with personal violence, once with a knife and once with a stick. On both of which occasions Scarborough was under the influence of liquor and apparently angry at defendant, and that on both occasions he, defendant, had left him to avoid being injured or killed. The statute, Section 3692, Revised Statutes 1929, provides that a defendant who has taken the witness stand "shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case." Defendant having testified to the alleged threats and hostile demonstrations,

it was clearly competent to ask him on cross-examination if he had not made statements contradictory of that testimony. [See State v. Ayres, 314 Mo. 574, 285 S. W. 997.]

(2) Defendant in his direct examination had referred to the house in which the gambling game was being conducted and in which the killing occurred as his place, and had also testified to acts on his part at the time in question indicating that he was exercising control not only of the premises but of the game. It was not outside the scope of his testimony in chief to ask him on cross-examination if it was his game.

Complaint is made of another question on cross-examination but as the court sustained defendant's objection to it and it was not answered it need not be noticed.

V. In his motion for new trial defendant complained of but one of the instructions given by the court. He refers to it as No. 4 but the criticisms offered have no application to Instruction No. 4, which merely defined certain terms. He evidently meant Instruction No. 9, which refers to deceased's reputation of being a "violent and dangerous" man when intoxicated. The criticism is that the evidence showed that deceased bore the reputation of being a "rash, vicious, quarrelsome and turbulent" man when intoxicated and that the instruction as worded too narrowly restricted the "qualities of the general bad reputation of the deceased." We think this criticism is without substance. There was no dispute in the evidence as to Scarborough's reputation. Defendant proved it by many witnesses, generally using in his questions substantially the language he claims should have been used in the instruction and the State not only made no effort to dispute that testimony but in the presence of the jury conceded the fact. The use in the instruction of the words "violent and dangerous," rather than "rash, vicious, quarrelsome and turbulent," could not have misled the jury or deprived defendant of any benefit to be derived from the proof of deceased's reputation.

There is another criticism offered, namely that the instruction submitted to the jury to find from the evidence that deceased's reputation was as stated, whereas the State had admitted the fact. The State did admit it but defendant did not seem willing to accept that admission and thereafter continued to offer evidence of the same character, which was admitted. He is hardly in position to complain now that the court submitted it to the jury to find the fact from the evidence. In any event there was no prejudicial error in the instruction in that respect. Deceased's reputation was proved by the testimony of witnesses for both the State and the defendant. No one disputed it and the State admitted it. It cannot be doubted that the jury accepted it as a fact.

40

Defendant complains of the refusal of certain instructions requested by him, marked 1 to 7 inclusive. We have examined them and in our opinion the matters contained therein, so far as proper and applicable to the evidence, were sufficiently submitted in the instructions given.

The motion for new trial contains some other complaints relative to the admission and rejection of evidence and remarks of the court and of counsel for the State. We find them without substantial merit and do not deem them of sufficient importance to justify further lengthening this opinion by discussion of them. Defendant appears to have had a fair trial. The information, verdict and judgment are in due form and sufficient and we find no reversible error in the record. The judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.