THE STATE v. THOMAS BISHOP and GEORGE BISHOP, Appellants.—
296 S. W. 147.

Division Two, June 23, 1927.

1. **ASSIGNMENTS: Instructions.** A general complaint of error in the instructions given in the motion for a new trial is too vague and indefinite under the Act of 1925, Laws 1925, page 198.

2. ———: **Sufficient Evidence: Defendant's Alone.** In determining whether there was sufficient evidence to support the verdict of guilty, it is not proper to consider defendant's testimony alone, but the evidence for the State must also be taken into consideration.

3. ———: ———: **Transporting Whiskey.** In the trial of a father and son charged with the unlawful transportation of corn whiskey, evidence that the sheriff, armed with a warrant for the search of the son's house, accompanied by other officers, met their automobile on the public street just as it was turning into a driveway to the son's house, and by quick action intercepted it at the rear of the house and found a five-gallon jug of corn whiskey between the father's knees and two one-gallon jugs on the back seat, and arrested them, is sufficient proof to sustain a verdict of guilty, against both father and son, although the son, who was driving the car and had dismounted by the time the officers reached it, testified that he drove into the

yard, stopped it, got out, went around in front of it, picked up the five-gallon jug, and as his father opened the door slid it in to him, and then got the two one-gallon jugs, and then saw the sheriff, and further testified that the whiskey was his, that his father had no interest in it, and that he had not transported it, but was just fixing to transport it.

4. ———: ———: ———: **Accessory.** The father having told his son that the sheriff had a warrant for the search of his house, and thereupon both got into an automobile and drove the five or six blocks to the son's house, and just as their automobile darted into the rear of the house the sheriff and the other officers accompanying him ran around the house as the son got out of the car and found a five-gallon jug of corn whiskey between the knees of the father who was sitting on the front seat, it was for the jury to say whether the father was aiding and abetting the son in transporting the whiskey, although the son testified that he picked up the jug and slid it in to his father after the car stopped, and that his father had accompanied him to his house for the purpose of taking care of his sick wife while he transported the whiskey elsewhere, and the father did not testify at all.

---

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 121, p. 133, n. 11, 12; Section 2292, p. 931, n. 5; 17 C. J., Section 3559, p. 212, n. 18; Section 3599, p. 271, n. 41. **Intoxicating Liquors,** 33 C. J., Section 541, p. 786, n. 52.

Appeal from New Madrid Circuit Court.—*Hon. E. P. Dorris,* Special Judge.

AFFIRMED.

*Von Mayes* for appellants.

(1) The information charging defendants with transporting intoxicating liquor in an automobile, the State must prove transportation in the specific manner alleged. State v. Samuels, 144 Mo. 68; State v. McGrath, 228 Mo. 413; State v. McConnell, 240 Mo. 269; State v. Bounds, 262 S. W. 411; 31 C. J. 748, sec. 305; State v. Stratton, 289 S. W. 568. (a) The manual handling of intoxicating liquor does not constitute unlawful transportation. Transporting upon the person is not a violation of the law. State v. Jones, 256 S. W. 542; State v. Bounds, 262 S. W. 411; State v. Breckenridge, 282 S. W. 149; Sec. 19, p. 242, Laws 1923. (b) Removal from one part of premises to another part of same premises is not transporting. Warren v. State, 250 S. W. (Tex.) 429; Liquor Transportation Cases, 205 S. W. 423; Cunard v. Mellon, 284 Fed. 890; Ready v. State, 290 S. W. 28. (2) A companion, riding in an automobile carrying intoxicating liquor, not owning or driving the car and having no interest in or control over the liquor and in no way assisting in its transportation, is not guilty of transporting intoxicating liquor. Lock v. Smith, 244 S. W. (Ark.) 11; Hitt v. Commonwealth, 131 Va. 752; Riojas v. State, 277 S. W. (Tex.) 640; State v. Helpley, 279 S.

W. (Mo.) 701; Richardson v. State, 228 S. W. (Tex.) 1094; Mullins v. Commonwealth, 245 S. W. 285; State v. Stewart, 289 S. W. 934. When an offense is committed the mere presence of another is not sufficient to characterize him as a principal or accessory. 16 C. J. 132, sec. 121; State v. Orrick, 106 Mo. 111; State v. Cox, 65 Mo. 29; State v. Woolard, 111 Mo. 248. (3) The verdict is not supported by substantial evidence. There was no proof that the intoxicating liquor in question was in the automobile at the time it was in motion. State v. Roten, 266 S. W. 994; State v. Ridge, 275 S. W. 59; State v. Rutledge, 262 S. W. 718; 16 C. J. 772, sec. 1580; White v. State, 18 Ga. App. 214; State v. Crabtree, 170 Mo. 642; State v. Faulkner, 175 Mo. 546; State v. Bowman, 294 Mo. 245. (a) A prima-facie presumption will not overcome the presumption of innocence. State v. James, 133 Mo. App. 300; State v. Shelley, 166 Mo. 616. (b) Presumption of innocence is one of law and fact. Reasonable doubt has reference to the degree of proof. Underhill on Criminal Evidence, sec. 40, p. 38. (c) Presumptions of fact generally are questions of fact. They are merely the major premises of those inferences which juries are at liberty to draw, in the light of their experience as men of the world from the facts directly proved. Leighton v. Morrill, 159 Mass. 271. (4) A conviction cannot be based on mere belief of guilt. State v. Wheaton, 221 S. W. 26. (5) In a doubtful case the presumption of innocence will turn the scales in favor of the defendant. State v. Shelley, 166 Mo. 616.

*North T. Gentry,* Attorney-General, and *Claud Curtis,* Special Assistant Attorney-General, for respondent.

(1) The jury found each defendant guilty but were unable to agree upon the punishment. The court assessed the punishment of each defendant. This was proper. Sec. 4048, R. S. 1919. (2) The court committed no error by overruling the defendant's demurrer; the evidence was sufficient to sustain the verdicts of guilty. State v. Helpley, 279 S. W. 701; State v. Milstead, 285 S. W. 429; State v. Bennett, 270 S. W. 295; State v. Thogmartin, 270 S. W. 313; State v. Nave, 285 S. W. 723; State v. Vesper, 289 S. W. 862; State v. Thompson, 289 S. W. 648; State v. Henke, 285 S. W. 392.

HENWOOD, C.—An information was filed in the Circuit Court of Pemiscot County charging appellants jointly with the unlawful transportation of about seven gallons of corn whiskey on or about March 6, 1925. At different terms of the court appellants alleged, first, the prejudice of the regular judge of the court against them, and later, the prejudice of the inhabitants of Pemiscot County against them. A change of venue was granted to New Madrid County, and after

considerable delay appellants stood trial in that county before a jury and the regular judge of another circuit who had been duly designated to try the case as special judge. The jury found appellants guilty, but failed to agree on their punishment. The special judge assessed the punishment of each at imprisonment in the penitentiary for two years. Their motion for a new trial being overruled, they were each sentenced accordingly, and then in due time appealed.

The following facts were developed at the trial in support of the State's case. The appellant George Bishop lived in a six-room house in the northwest section of the city of Caruthersville at the junction corner of Third Street and the highway to Hayti. His father, the appellant Thomas Bishop, lived eight or ten blocks away, at Sixth and Highland streets. The sheriff had been carrying a search warrant for George Bishop's house for four or five days, but had made no attempt to serve the same because of the serious sickness of George Bishop's wife. On the evening of March 6, 1925, between seven and eight o'clock, the sheriff, accompanied by one deputy and two police officers of Caruthersville, drove out Third Street by George Bishop's house, and, just as they turned to the left into the highway mentioned, they saw appellants approaching on Third Street behind them in an automobile, and saw the automobile turn in across the driveway, over the ditch, to the side of George Bishop's house. The sheriff stopped his car at the roadside, and he and the other officers ran across the rear of the premises and around the house to the automobile, two going around one way and the other two going around the other way. They found George Bishop on the ground, moving from in front of the automobile to the left side, near the driver's seat, and his father, Thomas Bishop, seated in the front seat on the right side. Between Thomas Bishop's legs they found a five-gallon glass bottle or jug filled with corn whiskey, and in the back part of the automobile or on the back seat they found two one-gallon glass bottles or jugs filled with corn whiskey. As to what happened at the crucial moment, the sheriff testified as follows: "Just driving by slowly and coming out Third Street and making the turn back on the highway to Hayti from our left. We seen their car coming up Third Street and it *darted* in to the side of the house, and I says, 'There they come now,' and we just run our car to the side of the road, went around the house and made the arrest." (Italics ours.)

He further testified that he stopped his car "immediately" and "about 100 feet, maybe 125 feet" from appellants, and when asked if he went around the house immediately, he said: "As fast as I could run." One of the other officers testified that it took "probably half a minute" to get around to appellants' automobile after the sheriff's car stopped. Another one of the officers said: "Don't know, but a very short time, because we jumped right out of the car and

went around the back way; could not have been but a little bit." It was after dark, but there was a street light on the corner. The sheriff was driving a Dodge and the appellants a Cadillac. George Bishop was referred to by one of the officers while on the witness stand as "the young man," but neither his age nor the age of his father, Thomas Bishop, appears in the record. Nor does it appear who owned the Cadillac. As to all material facts the testimony of all four officers was to the same effect.

The appellant George Bishop was the sole and only witness for the defense. He testified, in substance, that he went over to his father's house about 7:30 or eight o'clock and while there his father told him the sheriff had a search warrant for his house, but did not give the source of the information; that he and his father then started for his house in the Cadillac, where his father was to remain with his wife while he removed his whiskey from the house before the intended search was made; that before he got to his house he saw a Dodge in front of him and thought it was the sheriff's car; that he "drove up to the crossing and into the yard," and then "stopped and got out of the car and went around in front and picked up this five-gallon of liquor and *father opened the door and slid it in* [italics ours] and then got the two one-gallon cans;" that then he saw the sheriff and said, "Well, here they are;" that he drove the car, and that the whiskey was his, and that his father had no interest in it. On cross-examination he said he had not transported the whiskey, but was "just fixing to transport it."

I. Several assignments of error are found in the motion for new trial. Some of the assignments, including the general complaint as to the instructions given to the jury, are too vague and indefinite to **Assignments.** be reviewable here under the Act of 1925. [Laws 1925, p. 198; State v. Standifer, 289 S. W. 856; State v. Murrell, 289 S. W. 859; State v. Vesper, 289 S. W. 862.] Other assignments, otherwise reviewable, will be treated as abandoned, not being considered in appellants' brief. [State v. Murrell, 289 S. W. 859; State v. Kelley, 284 S. W. l. c. 803.]

II. We come now to the contention that there is no substantial evidence to support the verdicts against appellants or either of them, this being the only ground for reversal considered **Sufficient** and urged in their brief. In briefing this proposition **Evidence.** learned counsel for appellants has, in the main, adopted the testimony of the appellant George Bishop as representing the facts of the case, and then established by well settled authorities that such facts will not sustain a conviction on the offense charged. We are in full accord with these authorities, but they do not fit the facts and

317 Mo. Sup.—31.

circumstances presented by the State's evidence, and, therefore, have no application here.

As indicated by the recital of the State's evidence given above, the attention of the sheriff had been directed to George Bishop's house as a place where intoxicating liquor was kept or handled. From the issuance of the search warrant in the sheriff's hands we may assume that probable cause for this belief had been judicially shown and determined. And it so happened that, as the sheriff was "driving by slowly" and observing the house and premises, appellants appeared on the scene from the rear and "darted in to the side of the house" in the Cadillac. With quick dispatch the sheriff and the officers assisting him rushed to the Cadillac, found seven gallons of corn whiskey therein and "made the arrest." With George Bishop's admissions that he drove the car, and that it was his whiskey, there was nothing left for the jury to infer as to his guilt except that the whiskey was in the Cadillac when it "darted" across the ditch and "in to the side of the house." The facts mentioned, considered in connection with the size of the whiskey containers (one 5-gallon bottle or jug and two 1-gallon bottles or jugs) and their location in the Cadillac (the former between Thomas Bishop's legs in the front part of the car and the latter in the back part or on the back seat of the car), presented not only a strong prima-facie case against him but a case which could hardly lead to any conclusion other than the one reached by the jury.

In giving his side of the story, it is significant that George Bishop did not say from what place on his premises he got the whiskey when he put it in the car, as he says he did. He contented himself with the statement that he "went around in front and picked" it up and put it in the car. With his house under suspicion it is hardly reasonable to believe he kept the whiskey in the front yard. Be that as it may, we are strongly of the opinion, as was the jury, obviously, that he did not have time to get the *glass* bottles of whiskey and carefully load them in different parts of the car during the "half a minute" which elapsed between the time he stopped the car in the yard and the arrival of the officers at that spot. In any event, this was clearly a question for the jury, and practically the only question so far as concerns the case made against George Bishop.

As to the appellant Thomas Bishop, learned counsel emphasizes the testimony of his son and codefendant, George Bishop, to the effect that he was an innocent passenger or occupant of the car and insists, therefore, that the judgment of conviction against him cannot stand. Here, again, George Bishop's story presents a conflict in the evidence, which was for the jury, and not for the trial court nor for this court, to decide. Very likely, the jury was impressed by Thomas Bishop's report to his son, George Bishop, that the sheriff had a search warrant

for his house; that he was found by the officers still seated in the Cadillac, with the five-gallon bottle or jug of whiskey securely resting between his legs, although his son says he went to the house only for the purpose of staying with his son's sick wife, while his son removed his stock of whiskey from his premises ahead of the impending search; and, no doubt, the jury was also impressed by his son's statement on the witness stand that "father opened the door and slid it in," referring to his hurried loading of the five-gallon bottle or jug when he was "just fixing to transport it." Perhaps, the jury concluded that this evidence of *aiding* and *abetting* on his father's part really occurred at some other point before the trip to the house was made.

As said by HIGBEE, C., in the case of State v. Nave, 285 S. W. l. c. 725; "The inference 'looms large' upon the evidence adduced by the State that the defendants were jointly concerned in the transportation of the intoxicating liquor, as charged in the information. The jury discredited as unreasonable the testimony of the defendants that White carried the half gallon fruit jar of whisky in the bib of his overalls from the time he bought it in the afternoon until they got out of the car after they arrived at the ferry." And as said by WALKER, J., in the case of State v. Bass, 251 Mo. l. c. 126, where, as here, "there is a conflict between material testimony, the court will not undertake to decide which is of greater probative force, because this is the exclusive province of the jury."

With reference to the case made against Thomas Bishop, the following from 16 Corpus Juris, 133, is appropriate: "The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting. And it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred."

It was for the jury to say, first, whether the whiskey in question was transported as charged, that is, in an automobile; second, whether both defendants participated in the transportation. Manifestly, the evidence satisfied the jury on both of these issues. Their failure to agree on the punishment reflects a serious consideration of the case on their part. The trial judge gave his approval to the verdicts rendered and, by a proper exercise of his authority, fixed the punishment. In this situation it is not our province to interfere. Some of our previous rulings to the same effect are found in the cases of State v. Bennett, 270 S. W. 295; State v. Helpley, 279 S. W. 701; State v. Thompson, 289 S. W. 648.

Finding no error in the record proper, we affirm the judgment as to both defendants. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.