THE STATE v. W. S. FREDERICK, Appellant.—300 S. W. 678.

Division Two, December 12, 1927.

*R. W. Gabriel* for defendant.

*North T. Gentry*, Attorney-General, and *A. M. Meyer*, Special Assistant Attorney-General, for respondent.

HENWOOD, C.—The appellant (a negro) was charged with burglary and larceny by an indictment filed in the Circuit Court of Jackson County. The jury found him guilty of larceny only and assessed his punishment at imprisonment in the penitentiary for two years. He was sentenced in accordance with the verdict and then appealed.

The State's evidence shows that on January 27, 1926, the day in question, William H. Slaughter lived in an apartment house over a grocery store on North Main Street in the city of Independence, in Jackson County. Slaughter testified that, about nine o'clock in the evening of that day, he observed an automobile parked in front of the grocery store and near the entrance to a public alley. The automobile was a dark colored sedan. At that time, there was one negro man in the front seat and two negro men in the back seat of the car.

When he observed the car again, a few minutes later, only one of these men was in the car. Shortly thereafter, his wife "got all excited" and directed his attention to some men in the alley mentioned. By the aid of lights in the alley, he saw this car standing in the alley at the rear of Harbin Brothers Clothing Store and two men carrying bundles and putting them in the car. He went immediately to the sheriff's office, a short distance from his residence, and reported as to what he had seen. When a deputy sheriff and other witnesses reached the scene, the car had left the alley and started in the direction of Kansas City. An inspection of the store disclosed that an iron bar on one of the rear windows had been sawed and bent, the glass in the window broken out, and the lock broken off of the rear door on the inside. A large amount of merchandise was missing and overcoats, caps and other articles of clothing were "knocked down on the floor." The police department of Kansas City was notified and, sometime later in the evening, a car was discovered moving west on 15th Street in Kansas City, with three negro men on the front seat and bundles piled in the back part of the car. Several police officers in a "hot shot" Ford car were stationed at this point. When the spot-light of the police car was turned on the other car, "it began to speed up" on 15th Street for two blocks, turned south to 19th Street, then east and "made a circle," then ran off of the pavement and stuck in the mud and stopped. Appellant, who was driving the car, and his two companions jumped out of the car and started to run. They were halted and arrested by the police officers, who had joined in the chase. The other two negroes gave their names as Walker and Adams. One of them said he threw away his pistol after he got out of the car, but no firearms were found on the person of either of them or appellant at the time of their arrest. Sixty suits of clothes, 22 overcoats and 8 large pieces of goods were found in the car and returned to Harbin Brothers upon their identification of the same. Louis A. Harbin, a member of the firm, estimated the value of these articles at $3600. It appears from the testimony of one of the police officers, that both Walker and Adams were ex-convicts and that one of them had been released from the Missouri penitentiary "about 24 days" before this occurrence. Allen Selby, another witness for the State, said that he saw the "dark-colored closed car" parked in front of the grocery store on North Main Street at "a quarter of nine" and that "two colored men" were in the car when he saw it. The State's evidence further shows that the automobile captured by the police officers was a Hupmobile sedan.

Appellant took the stand and testified quite at length in his own behalf. He said he was thirty-seven years old and had worked at Swift & Company's packing house in Kansas City for about twenty years, but since 1922 had been engaged in the taxicab business; that "between seven-thirty and eight o'clock" he responded to a call at

"1604½ East 12th Street;" that these two negroes then engaged his taxi for "three dollars an hour" and said "take us to Independence;" that he did not know their mission, but thought they were going to see a woman, because they talked "about some woman named Helen;" that they asked him to stop first in front of a drug store, and both left the car for about twenty minutes; that the next time they got out his car was parked "just at the head of the alley;" that he went to sleep while sitting in the car and in a few minutes one of them returned and told him to drive through the alley; that when he "got half way" he was ordered to stop, and the negro in the car got out and started to load bundles into the car; that he said, "No, you can't put that stuff in my car," and then the other negro showed up with a pistol, and that one of them held the pistol on him while the other loaded the bundles in the car; that both of them got in the front seat with him and one of them kept the pistol pointed at him all the way to Kansas City; that the negro with the pistol threatened to shoot him several times when he started to kill the engine and also when he started to jump out of the car; that he slowed up purposely when he saw the police officers on 15th Street and one of them stepped on the accelerator and ordered him to drive fast and make the turns that he made; that he did not know these negroes at the time, but learned after the trouble that their names were Lukins and Evans; and that he told the police officers the same story that he told at the trial. Several witnesses testified to his good reputation for truth and veracity and some of these witnesses vouched for his good reputation for honesty and integrity.

I. Counsel for appellant earnestly contends that this conviction should not be permitted to stand because of the failure of the trial court to instruct the jury on the law of circumstantial evidence. The only assignment of error in the motion for a new trial touching this matter is as follows:

"3. Because the court erred in failing to instruct the jury upon all the law arising in the case and necessary for the guidance of the jury in arriving at a verdict in this case, as requested by the defendant, over the exception of the defendant."

The record fails to show that any such instruction was requested by defendant, and counsel, in his brief, concedes that no instruction of this character was offered. This leaves the assignment in the motion standing only as a general complaint against omitted instructions, without specifying or pointing out "in detail and with particularity" the failure to instruct on circumstantial evidence or any other matter. It is apparent at once that this assignment does not comply with the present rule relating to motions for new trial, as provided by the Act of 1925. [Laws 1925, p. 198; State v. Standifer, 289 S. W. 856.] Moreover, general assignments of error on this

ground were held to be insufficient under the old statute. [Sec. 4079, R. S. 1919; State v. Farrar, 285 S. W. l. c. 1004; State v. Burrell, 298 Mo. l. c. 679, 252 S. W. l. c. 711; State v. Conway, 241 Mo. l. c. 291, 145 S. W. l. c. 448.] Counsel for appellant relies, in this case, upon the exception to the general rule announced and followed in the Conway case. Of course, appellant cannot, in this case, invoke the exception to the general rule declared in the Conway case, because that case was decided long before the Act of 1925. And, in this connection, it should also be noted that this court did not follow the Conway case in later cases under the old statute. This plain·ly appears in the application of the general rule in the Farrar case and the Burrell case, cited above, no exception to the rule being recognized or considered in those cases. See also separate opinion of GRAVES, J., State v. Swarens, 294 Mo. l. c. 158, 241 S. W. l. c. 941.

II. The only other complaint mentioned or considered by counsel for appellant, in his brief, is that the verdict is against the weight of the evidence. The motion for a new trial assigns error on that ground, but this point must necessarily fail of consideration in this court. Obviously, the jury did not accept, as true, appellant's explanation of the incriminating circumstances shown against him, but were satisfied of his guilt, of the larceny charged. Doubtless, they concluded that he had no part in the burglary, as they acquitted him of that charge. However, it is elementary that this court will not weigh the evidence or pass upon the credibility of the witnesses.

III. Other assignments of error contained in the motion for a new trial are not considered or referred to in appellant's brief, which was prepared by learned counsel. In this situation, we would be justified in treating such other assignments as abandoned. [State v. Bishop, 296 S. W. 147; State v. Murrell, 289 S. W. 859; State v. Kelley, 284 S. W. 801.] Nevertheless, we have carefully examined the entire record and find no error. The companion offenses of burglary and larceny are well pleaded in the indictment; the jury found appellant "guilty of Larceny only, as charged in the indictment," thereby making their verdict responsive to the issue; and the evidence is amply sufficient to support the verdict and the judgment based thereon.

Accordingly, the judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.