THE STATE v. WILLIAM BAUER and PAUL DE BARTALO, Appellants.— 12 S. W. (2d) 57.

Division Two, December 18, 1928.

604

*P. S. Terry* and *R. E. Kleinschmidt* for appellants.

606

*Stratton Shartel*, Attorney-General, and *David P. Janes*, Assistant Attorney-General, for respondent.

HENWOOD, C.—The appellants were jointly charged, in the Circuit Court of Jefferson County, with the unlawful use and operation of a still for the purpose of distilling and manufacturing whisky for sale. They were tried together, and the jury found them guilty and assessed their punishment at imprisonment in the penitentiary for two years. They were sentenced accordingly, but the sentence of De Bartalo was commuted to confinement in the Reform School for Boys at Boonville for two years, upon it appearing to the satisfaction of the court that he was under the age of twenty-one years. The case is here on their appeal.

The proof offered by the State shows that, on the afternoon of December 17, 1925, the sheriff and two of his deputies went to the farm of the appellant Bauer, in Jefferson County, with a search warrant. After they left the highway and entered Bauer's premises, one of the deputies "smelled the odors of whiskey down at the first gate." As they approached closer to the house and barn, Bauer and De Bartalo (appellants) came out of the barn and started to run in the opposite direction from the officers. They were halted, brought back to the barn and arrested by one of the deputies. In the barn, the officers found a "triple still" in operation, making whisky, 135 gallons of whisky, in five-gallon cans, 5000 pounds of lump sugar, in sacks, and "two big vats filled with mash." The fire under the still was removed, but it took several hours for the still to cool sufficiently to be dismantled. While waiting, the officers "watched them [appellants] cook off near a can full" of whisky. Three trucks were used in hauling the still, sugar and whisky "to town." The sheriff and one of his deputies testified that they knew the smell of whisky, and that they had smelled whisky like this whisky before. The sheriff said the boy (De Bartalo) told him "it was about one hundred

eighty proof.'' One of the deputies said ''it tested one hundred eighty.''

The appellant Bauer took the stand in his own behalf, and, according to his testimony, he was fifty-two years of age, was engaged in farming, owned the premises in question, and lived there with his wife and four children. He had leased the cow barn on the west side of his barn to some stranger from St. Louis, whom he had never seen before, nor since the day the lease was given. He neither remembered the stranger's name nor knew whether or not it appeared in the lease. He identified the lease (defendant's Exhibit 3), but it was not offered in evidence. He received no rent, but ''was supposed to get something.'' De Bartalo was sent there by the man who leased the cow barn. He saw the sugar when it was brought to the barn, and thought the other things were brought there ''after dark.'' He knew they were making ''alcohol'' there, but had nothing to do with it, and did not consent to it. He thought he ''couldn't make them quit, if they had a lease.'' He was in the barn, shucking corn, on the afternoon of the search. He ''heard a car coming,'' and, when he saw the sheriff, ''made a run to get over that mud'' back of the barn, and ''aimed to get out there and see what he [the sheriff] wanted.''

Several witnesses testified to Bauer's good reputation for law-abiding citizenship.

I. Appellants attack the amended information upon which they were tried and convicted. Omitting formal parts, it reads as follows:

''George V. McCormack, prosecuting attorney within and for the County of Jefferson and State of Missouri, upon his official oath informs the court that at the County of Jefferson and State of Missouri on or about the 17th day of December, 1925, William Bauer and Paul De Bartalo did then and there willfully, unlawfully and feloniously use and operate a still and worm *for the purpose of distilling and manufacturing* for sale certain intoxicating liquor, to-wit: One hundred gallons of whiskey, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State.'' (Our italics.)

It is first contended that the information is insufficient because it fails to follow the precise language of the statute, by charging that the still was used ''in the process of distilling'' intoxicating liquor. As above shown, it is charged in the information that the still was used and operated ''for the purpose of distilling and manufacturing'' intoxicating liquor. This is a hypercriticism. It points out a distinction without a dif-

ference. To say that a certain device was used *for the purpose* of doing a specific thing is manifestly the same as saying that a certain device was used *in the process* of doing a specific thing. At least, they have one and the same meaning in charging an offense under the statute in question. [Sec. 2, Laws 1923, p. 237.] We hold, therefore, that the information sufficiently pleads an offense under that statute.

It is seriously urged that the trial court erred in overruling the motion to quash the information, which asserted that appellants had not been accorded a preliminary hearing upon the offense sought to be charged, as provided in Section 3848, Revised Statutes 1919. In support of this motion, appellants offered in evidence the affidavit or complaint of the sheriff upon which they were accorded a preliminary hearing. This affidavit or complaint states that appellants had ''in their possession a large quantity of alcoholic liquors, containing more than one-half of one per cent volume, alcoholic content, to-wit: about 140 gallons of alcoholic liquor, by them made, distilled and manufactured, unlawfully and feloniously, and *did then and there have in their possession under their control a large whiskey still, worms and doubler and such other equipment for the manufacture of alcoholic liquors, unlawfully to be distilled and manufactured,* and that *such still was then and there in unlawful, felonious operation, making and distilling alcoholic liquors aforesaid,* contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.'' (Our italics.) They also offered in evidence the transcript of the justice before whom the affidavit or complaint was filed and by whom the preliminary hearing was given. The transcript quotes the sheriff's return on the search warrant, which among other things, contains the following: ''The two men were arrested found operating still.'' The transcript further says that William Bauer and Paul De Bartalo were given a preliminary hearing on the affidavit of the sheriff, charging them ''with feloniously having in possession and feloniously manufacturing moonshine liquor, and with feloniously possession of still, sugar, etc.''

It may be conceded that neither the affidavit of the sheriff nor the docket entries of the justice are written with care and precision, and it may be conceded also that the affidavit charged appellants with the unlawful possession of intoxicating liquor, a misdemeanor. But, it will be noted that the affidavit does not, as appellants contend, merely charge them with the unlawful possession of a still, another misdemeanor, because it charges them, in effect, with the operation or use of the still in the manufacture of intoxicating liquor, and the 2nd Subdivision of Section 2, Laws 1923, page 237, provides that the

possession of a still is a misdemeanor, only when it is not charged that such still has been used in the manufacture of intoxicating liquor. So, while it may be said that the affidavit charges appellants with the unlawful possession of intoxicating liquor, a misdemeanor, it also charges them, in substance and in effect, with the use of a still "in making and distilling intoxicating liquors." Thus, it plainly appears, from the affidavit and the docket entries, that appellants were not only charged, in the affidavit, with the felony alleged in the information, but, also, that they were accorded a preliminary hearing upon that particular felony, and that felony only.

In an able discussion of this subject, in the case of State v. Flannery, 263 Mo. 579, 586, 173 S. W. 1053, WALKER, J., says: "This being the purpose, it follows that the complaint upon which the examination is based need not be framed with the same particularity as an indictment or information, *but will be sufficient if it states the offense in substance* so that the accused may know the nature of the charge preferred against him. . . . Oftentimes it is of necessity made by laymen, who are not only unfamiliar with the terminology of the law, but wholly ignorant of criminal pleading. To hold that a complaint authorized to be filed under such conditions should conform to the rigid rules of criminal procedure would be to destroy the purpose of the statute, which, in addition to the objects stated, provides a way by which the defendant may be legally arrested and, if probable cause is found to exist, detained until an indictment or information may be preferred against him. His legal arrest is, therefore, of equal importance and of more effective force in the administration of the criminal law than the filing of the complaint upon which the warrant of arrest is based. Having accomplished this purpose, *the defects and informalities of the complaint, unless it fails utterly to state the substance of the offense with which the accused is charged, should not be held sufficient to invalidate the subsequent proceedings.*" (Our italics.)

From the proof furnished by appellants themselves, it is apparent that they were accorded a preliminary hearing upon the offense charged in the information, and that the trial court properly overruled the motion to quash the information, in which they asserted to the contrary.

II. Appellants further contend that their motion to quash the search warrant and to suppress the evidence obtained thereunder  should have been sustained on both of the grounds specified therein; first, because the place to be searched was not described "as nearly as may be," as provided in Section 11, Article II, of the Constitution of Missouri; and second, because the description in the search

warrant does not correspond with the description in the application therefor.

The place to be searched is described in the search warrant as follows:

"In Big River Township, West of Jones Creek, adjoining the John Kriegbaum Farm, in the farm of ——— Bauer, in a frame house or in a garage and outbuildings, connecting in use therewith, or in the curtilage of outbuildings, barns, chicken house on same."

In support of the motion, the appellant Bauer testified that the place searched was his home and residence, and was occupied by him and his family as their home; that his two brothers, Louis and Frank Bauer, lived "near there, west, kinda northwest" of the Kriegbaum farm, and, "if they didn't join, they are very close" to the Kriegbaum farm; that their farm is "west of Gravois Road and north from Jones Creek;" that his farm is "north and south, on both sides of the creek," and his house and barn are on the "north" side of Jones Creek; and his brothers' barn was "on the other side." Henry Ficken testified that Louis and Frank Bauer's farm "is right close" to the Kriegbaum farm, "if it don't join," but was "not certain" whether it "joins" or not; that William Bauer's farm was "northwest" from Jones Creek, the same direction as his brothers' farm, but he also said that William Bauer's farm was "kinda north and south" of Jones Creek, that is, "he has land on both side of the creek." Jesse Buxton testified that he was unable to say whether or not Louis and Frank Bauer's farm joins the Kriegbaum farm, but "always thought they cornered;" and that William Bauer's farm and his brothers' farm were both "north from Jones Creek."

It is true that neither the search warrant nor the application therefor gave appellant William Bauer's first name, and it appears, from the evidence offered, that his two brothers, Louis and Frank, lived on a farm in the same general locality, that is, in the neighborhood of Jones Creek. What the distance was between their farms, or whether the one was close to the other does not appear; nor was the appellant William Bauer, or either of his witnesses, able to say positively that his brothers' farm adjoined the Kriegbaum farm. But, it was not denied, and it may be inferred from the inquiries made of the witnesses, that the farm of the appellant William Bauer did adjoin the Kriegbaum farm, and the search warrant described the place to be searched as "in a frame house or in a garage and outbuildings, connecting in use therewith, or in the curtilage of out buildings, barns, chicken house, *in the farm of* ——— *Bauer, adjoining the John Kriegbaum Farm.*" (Italics ours.) Moreover, the proof fails to show that the farm of Louis and Frank Bauer had on it a frame house, garage, chicken house, outbuilding , or any house or buildings whatsoever, except a barn; whereas, it was not denied,

and may be inferred from the evidence offered, that such a house and such buildings were located on the farm of the appellant William Bauer. So, it is not true, as appellants contend, that the description in the search warrant and the application therefor could be as well applied to the farm of Louis and Frank Bauer as to the farm of the appellant William Bauer. And, while the "farm of ———— Bauer" is described in the search warrant as "west" of Jones Creek, and in the application as "northwest" of Jones Creek, and the evidence shows that the farm of appellant William Bauer was "north and south on both sides of the Creek," there was no showing as to whether or not Jones Creek follows a winding course, nor as to whether or not some of his farm was located west or northwest of the creek. In view of the undisputed marks of identification contained in the search warrant and the application therefor, and the other facts and circumstances developed in connection therewith, we must conclude that the requirements of the Constitution and the statute (Sec. 25, Laws 1923, p. 244) were substantially complied with, in describing the place to be searched "as nearly as may be." When confronted with a similar situation, in the recent case of State v. Stough, 2 S. W. (2d) 767, 770, we said: "It seems neither necessary nor practical to describe a farm dwelling house in a search warrant with the same degree of particularity as a dwelling house located in a city, town, or village, where different families live in the same house and in adjoining houses, and where houses may be definitely described by street numbers or by other marks of identification." In the case of State v. Lock, 302 Mo. 400, 421, 259 S. W. 1. c. 124, the opinion of this court, en banc, is thus expressed: "We think the description ought to identify the property with sufficient clearness and certainty, so that a mistake may not ensue." The Kentucky Court of Appeals says: "Certainty to a common intent is all that is necessary in the descriptive part of a search warrant." [205 Ky. 55, 265 S. W. 433.]

The description in the search warrant is substantially the same as the description in the application, as to the location of the premises to be searched, the kind and character of the buildings located thereon, and other definite marks of identification. The only material difference in the language of the two descriptions is, as already indicated, that "the farm of ———— Bauer" is referred to as "west" of Jones Creek, in the search warrant, and as "northwest" of Jones Creek, in the application. Hence, it is hardly tenable to say that the description in the search warrant does not "correspond" with the description in the application.

It follows that the trial court properly upheld the validity of the search warrant and the legality of the evidence obtained thereunder.

III. Complaint is made of Instruction 1 because it authorized a conviction upon a finding by the jury that appellants "did have in their possession and operate a certain still . . . in the manufacture of intoxicating liquor for sale," instead of requiring the jury to find that appellants "used a still in the process of distilling intoxicating liquor for sale." In other words, this instruction is criticized because it did not follow the precise language of the statute which defines the offense charged. This complaint is fully answered in the discussion of the same criticism with reference to the information. It will suffice to say that this instruction, in effect, predicated a verdict of guilty upon an affirmative finding as to all of the essential elements of the offense charged, as defined by the statute, and was, therefore, a correct declaration of the law.

IV. While the sufficiency of the evidence is challenged in the motion for a new trial, that question is not considered in appellants' brief, nor was it urged in the oral argument of their learned counsel before this court. Let it be said, however, that the facts and circumstances developed by the State at the trial are abundantly sufficient, in every particular, to support the verdict in this case. For rulings to the same effect, based on similar proof, see State v. Nerini, 6 S. W. (2d) 853; State v. Stough, 2 S. W. (2d), supra; State v. Widick, 292 S. W. 52; State v. Dailey, 280 S. W. 1044; State v. Cockrum, 278 S. W. 700; State v. Thogmartin, 270 S. W. 313.

We find no prejudicial error in the record. The judgment is accordingly affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.