THE STATE v. HUGH NICHOLS, Appellant.—49 S. W. (2d) 14.

Division Two, April 8, 1932.

*Langdon R. Jones* for appellant.

116

*Stratton Shartel*, Attorney-General, and *Henry H. Stern*, Assistant Attorney-General, for respondent.

118

ELLISON, J.—The defendant-appellant was convicted by a jury in the Circuit Court of Stoddard County (on change of venue) on a charge of transporting moonshine in Dunklin County, and his punish-ment assessed at two years' imprisonment in the penitentiary. As we have concluded the judgment must be reversed and the cause remanded we shall discuss only two of the many assignments of error: one challenging the sufficiency of the State's evidence; and the other complaining of the circuit court's action in overruling his plea in abatement, which assailed its jurisdiction.

The facts may be summarized as follows. The sheriff of Dunklin County and two of his deputies obtained information from some source that W. H. (Bill) Nichols, the appellant's father, would be either delivering or receiving whiskey on a certain night somewhere along the highway south of Kennett, the county seat. They obtained a search warrant for the father's automobile and about ten o'clock that night, which was dark and cloudy, started on a scouting trip. They had not seen the appellant for two years, did not know he was in the county, and were not expecting to encounter him.

Presently the officers were passed by the automobile they sought and recognized the elder Nichols in it but neither of the other two passengers, except that the sheriff's wife, who was also a deputy sheriff, thought one of them was the appellant. Another strange car, which has nothing to do with this case, was closely following. These two cars were going one way, the officers were headed the other. They switched off the lights of their automobile, turned around in the road, threw on their lights again and started back after the Nichols car, having it in view until and while it stopped opposite a filling station 400 or 500 yards further down the highway. The strange car passed and went on. The elder Nichols got out and crossed over to the station. The officers drove up and the sheriff alighted and informed Nichols he had a warrant to search the automobile, Nichols disclaimed ownership thereof.

At about the same time one of the deputy sheriffs approached the car with a flash light. The appellant, Hugh Nichols, was seated in

the driver's position. The occupants slammed the door on the officer's hand and started in flight. Their engine had been running all this time. The deputy sheriff shot a hole in one rear tire and all the officers followed in pursuit, in their automobile. The sheriff testified he could have overtaken the fugitives if he had desired but that he preferred to let them run on. About a quarter of a mile from the filling station they veered to one side of the road and threw out a glass gallon jug which shattered on the concrete pavement. The officers' car was then behind them not more than 50 to 100 yards. Something like a half mile further on the fleeing car stopped and the two occupants got out or were in the act of getting out and approaching the officers when the latter drew up. The appellant complained strenuously about the shooting of his tire. The other occupant of the car proved to be a man named Barnett.

The officers took both into custody, put them into their automobile and drove back up the road to where the bottle had been thrown out. The concrete pavement was wet with the contents thereof. No one else had passed during the intervening time. The officers mopped up some of the liquid with a man's handkerchief and carried it back to the county seat, where they squeezed it into a vial and preserved it. This liquid was introduced in evidence at the trial and shown to be moonshine. When the parties got back to the filling station the elder Nichols had gone.

The defendant stood on his demurrer to the State's evidence and offered no testimony.

I. The appellant contends the State failed to make a case for several reasons. First, it is asserted the evidence wholly fails to show there was liquor in the Nichols car before it stopped at the filling station; and that the gallon bottle of moonshine which the boys threw away in their flight therefore may have been received and put in the car at the filling station before the officers drove up. If this is true, says appellant's learned counsel, the moonshine had not yet been transported when the search warrant was presented, and the act of appellant in running away was referable to a desire to protect his father, betokens a lack of criminal intent, and does not constitute a crime. On this point the following cases are cited: State v. Varnell, 316 Mo. 169, 289 S. W. 844; State v. Huff, 317 Mo. 299, 296 S. W. 121; State v. Corp (Mo.), 22 S. W. (2d) 774.

We are not able to accept this view either of the facts or the law. The testimony of the sheriff was that after he had turned his automobile around and was following the Nichols car, he had it in view as it pulled up to and stopped opposite the filling station, and thereafter. And while he and the other officers were not asked categorically whether they saw any liquor put in the car, yet they described

the movements of the elder Nichols and what occurred; and the necessary inference is that no liquor was received at that place, and that the moonshine later thrown away by the defendant already was in the car. [State v. Bishop, 317 Mo. 477, 482, 296 S. W. 147, 148.]

██ But even if the fact be otherwise we cannot see how it will help the appellant. Suppose it were true the moonshine had been put in the automobile at the filling station, and that on the arrival of the officers the defendant fled with it; would that not be transportation? Or suppose, as also is suggested, the liquor had been in the car all the time, but the appellant was ignorant of its presence until the officers announced they had a search warrant, and then he fled; would that not be transportation? The decisions cited by appellant do not say to the contrary.

In the Varnell case, the defendant was charged with being an accessory after the fact to the commission of a felony. It was merely held the evidence was insufficient because there was no proof the defendant knew the principal had committed a felony; and none that the defendant assisted the principal in escaping, since the latter made no effort to escape. The case has no bearing on the instant facts. If the moonshine was in the car before the stop at the filling station, and the appellant knew it, he was an accomplice, or, at least, the jury would have been justified in so finding, State v. Bishop, supra, 317 Mo. 1. c. 483, 296 S. W. 1. c. 149; and an accomplice is not an accessory after the fact, State v. Umble, 115 Mo. 452, 461, 22 S. W. 378, 380. On the other hand, even though the moonshine was not put in the automobile until it reached the filling station, or the appellant did not know it until then, he should not be immune from prosecution for the independent crime of transportation committed thereafter, merely because, forsooth, his motive was to aid or abet his father in escaping the consequences of another offense.

In the Huff case the defendant was prosecuted for unlawful possession of intoxicating liquor. He had rented and lived in rooms owned by a woman to whom he was engaged to be married. On the arrival of officers with a search warrant he ran to the kitchen, which was not one of the rooms he had rented, took from a cupboard a bottle containing intoxicating liquor, and broke it; and there was proof of other conduct indicating he knew there was whiskey in the house and that he desired to thwart the officers. But no liquor was found on his person or in any part of the premises under his control. The evidence was held insufficient to show possession, being equally consistent with an intent on the defendant's part to protect his fiancee in her possession. The inapplicability of the case to the instant facts is obvious, since the evidence here tends to prove the appellant knowingly transported the moonshine, at least during his flight from the filling station.

Very similar to the Huff case is the Corp case. There the defendant was convicted of selling moonshine which he produced out of his pocket, while visiting in his brother's home. A few minutes later officers raided the house whereupon the defendant and the brother rushed to the kitchen and started breaking bottles containing liquor. This testimony was admitted by the trial court as tending to show contemporaneous possession of liquor by the defendant, in corroboration of the proof of the previous sale. This court held the evidence should have been excluded because, as in the Huff case, it was insufficient to prove defendant's possession, the premises not being his and his conduct being equally explainable on the theory that he was merely protecting his brother.

 It is next contended the evidence for the State fails to show the moonshine was transported by the automobile, and not *on the person* of one of the occupants. If it was being carried in the latter manner it was not a transportation within the meaning of our prohibition laws, Section 4523, Revised Statutes 1929. The case cited and quoted from is State v. Vinson (Mo.), 22 S. W. (2d) 779, 780, where it is said: "If defendant had actual physical possession and control of the pint of whisky, that is, if it was in his hand or in his pocket, or if it was supported by his clothing, it was on his person." Appellant's counsel suggests the gallon bottle of moonshine here involved may have been carried on the lap of the occupants of the car.

Closely related questions had been decided by the appellate courts of this State several times. In State v. Peters (Mo.), 6 S. W. (2d) 838, where a half-pint bottle of whiskey was thrown from an automobile when intercepted by officers, this court said, considering the fact that the occupants had been drinking and the size of the bottle, the natural inference was that it had been carried on the person, as is usual in such circumstances, and it was ruled the State had failed to make a case on the charge of transportation. In State v. Eklof (Mo.), 321 Mo. 548, 11 S. W. (2d) 1033, the court held the stronger inference to be that an uncapped pint bottle containing moonshine, found in an automobile after a collision, had been carried on the person, rather than that it had been transported on the floor of the car, where it was found. In the Vinson case, supra, the bottle involved also was a pint bottle and the defendant was seen to reach down by his side, pull it out and break it over the door. These facts, it was decided, supported the inference that the bottle had been carried in the defendant's pocket. In State v. Fox (Mo.), 46 S. W. (2d) 544, the bottle thrown from an automobile when the occupants thereof were accosted by an officer was a quart bottle containing intoxicating liquor. The court observed that the bottle in the Peters case, supra, was only a half-pint bottle such as is usually carried on the person whereas the bottle involved in the case under decision was a quart bottle, but added it was "still a bottle," and ruled the proof

insufficient to show transportation in violation of the statute. On the other hand, in State v. Nave (Mo ), 285 S. W. 723, where a defendant testified he carried a half-gallon jar of moonshine in the bib of his overalls in going from the point where he purchased it to an automobile and while riding therein to the place of his arrest (distance not shown) the court said the jury must have discredited that story.

We question whether the carrying of a ten-gallon keg or a five-gallon keg or even a one-gallon bottle of intoxicating liquor on the lap, or merely resting on the body or clothing, of an individual riding in an automobile would be classed as transportation "on the person." The reason for the statutory exemption would seem to be that such quantities of liquor as are ordinarily and conveniently carried on the person are small and more often for personal use than for sale. The expression "on the person" has a more restricted meaning than "upon or about the person" as used in the concealed weapon statute, Section 4029, Revised Statutes 1929; see State v. Scanlan, 308 Mo. 683, 694, 273 S. W. 1062, 1065; and it is held in State v. Breckenridge, 219 Mo. App. 587, 282 S. W. 149, that carrying five one-gallon containers of alcohol in a suitcase or sack is not transportation on the person. If the mere fact that liquor is moved while in actual physical custody of and supported by an individual constitutes carriage on the person, then the carrying of any quantity of intoxicants, however great, by a pedestrian would not be transportation. The Breckenridge case, supra, holds the exception in the statute contemplates "the carrying of intoxicating liquor in a pocket of the clothing, or in any such manner as articles are usually carried on the person as that term is ordinarily understood;" and this, to us appears to be the rational interpretation. The language seemingly to the contrary in State v. Vinson, supra, 22 S. W. (2d) l. c. 780, quoted by appellant and set out above, should be interpreted in the light of its context, the bottle there involved being a pint bottle.

But without deciding that question finally this much can be affirmed without hesitation. If, as in the Peters, Eklof and Fox cases, the small size of the bottle, a half-pint, pint or quart, and the fact that such containers are usually or conveniently can be carried on the person, justifies the inference that they were so carried, then, by the same token, the inference ought to be the other way when the bottle holds a gallon, and is not adapted to convenient carriage on the person. The further facts that the appellant fled when apprised the officers had a search warrant for the automobile, and that there was nothing to indicate he and his fellow passengers had been drinking or making use of the liquor for their own pleasure, perhaps have some tendency to strengthen that inference. We think there was a case for the jury.

■ But the judgment must be reversed and the cause remanded for another reason. The case was prosecuted by information filed in the Dunklin County Circuit Court. When the cause came on for hearing, on change of venue, in the Stoddard County Circuit Court the appellant filed a plea in abatement to the jurisdiction on two grounds: first, that the certificate to the transcript of proceedings in the justice court lodged in the Dunklin County Circuit Court had not been signed by the justice, as appeared from the certified transcript sent over by the Circuit Clerk of Dunklin County to the Stoddard County Circuit Court; and, second, that the transcript showed no affidavit or verified complaint charging the appellant with any crime had ever been filed before the justice as a basis for the preliminary hearing. On these grounds it was contended the appellant had never had a preliminary hearing, in a legal sense, and that the prosecution by information was void and the court without jurisdiction.

The proceedings as shown by the transcript in the record filed here were as follows:

Dec. 5, 1928 — Warrant for arrest of defendant issued by T. Paul King, J. P., reciting complaint had been *made* before him charging the Defendant with the felonious transportation *of moonshine* whiskey.

Dec. 5, 1928 — Defendant gives $1,000 bond to appear before the above Justice to answer the charge of "transporting whiskey."

Dec. 19, 1928 — Defendant files application for change of venue from above Justice to some other Justice of the Peace in the township, reciting he is charged with transportation of "intoxicating liquors."

Dec. 19, 1928 — Warrant returned duly served and change of venue granted by T. Paul King, J. P., to M. F. Foster, J. P , and papers certified to latter Justice by former.

Dec. 19, 1928 — Defendant gives $1,000 bond to appear before M. F. Foster, J. P., to answer charge of "transporting intoxicating liquor."

June 7, 1929 — After five continuances preliminary hearing held before M. F. Foster, J. P., and justice finds "an offense has been committed as is charged, and there is probable cause to believe the defendant guilty thereof;" and defendant bound over to Dunklin County Circuit Court.

June 7, 1929 — Defendant gives $1,000 bond for appearance before Circuit Court "to answer a charge of felonious transporting of *moonshine* whiskey."

June 10, 1929 Certificate to transcript of all proceedings before M. F. Foster, J. P., but certificate not signed by Justice, line being left blank.

In the argument on the plea in abatement the prosecuting attorney called attention to the fact that the appellant's bond given on June 7 for his appearance in the circuit court recited he was to answer to a charge of "felonious transporting moonshine whiskey," and contended this recital operated as a waiver, both of the absence of a verified complaint from the transcript or a recital that one had been filed, and of the justice's apparent failure to sign the transcript, citing State v. Flannery, 263 Mo. 579, 173 S. W. 1053. The court sustained the prosecuting attorney's contention and further called attention to the fact that the warrant for the arrest of the defendant appearing in the transcript recited "complaint has been made before me," that the defendant "unlawfully and feloniously transported moonshine whiskey." The court then commented further on the long course of the proceedings in the justice court, and referred to the recitals in the application for a change of venue and the various bonds that had been filed. The court's conclusion was "it is too late after all those things when he comes to trial in this court to bring up the absence of original complaint. I may be wrong and if so you are getting all the benefit."

After the State's evidence was in the prosecuting attorney put on the stand the Clerk of the Circuit Court of Dunklin County and by him identified the original transcript lodged in that court by Justice Foster. He was permitted to show by this witness that the original transcript did in fact bear the signature of the justice, and this original transcript brought up to the Stoddard County Circuit Court out of the files of the Dunklin County Circuit Court was admitted in evidence over the objection of the appellant.

The original transcript, like the certified copy, contained no affidavit or verified complaint initiating the prosecution, and no recital that one had been filed, giving the substance thereof.

In our opinion the proceedings were fatally defective. Section 3503, Revised Statutes 1929, prohibits the filing of an information charging a felony until the defendant shall first have been accorded the right of preliminary examination before a justice of the peace [State ex rel. McCutchan v. Cooley, 321 Mo. 786. 12 S. W. (2d) 466 ] And by plain implication Section 3467, Revised Statutes 1929, makes the filing of a complaint in writing and upon oath the first step in the institution of such a criminal prosecution. The warrant for the arrest of the accused is based thereon, Monson v. Rouse, 86 Mo. App. 97, 101, and the complaint and warrant with the officer's return and production of the prisoner become the basis for the examination and preliminary finding of the justice which must precede the filing of

the information. [Ex parte Saxbury, 323 Mo. 194, 199, 18 S. W. (2d) 1041, 1042.]

While it is true that peace officers may sometimes make an arrest without a warrant, where they have reasonable ground to believe a felony has been or is being committed, State v. William Davis, 329 Mo. 743, 46 S. W. (2d) 565, and likewise on hue and cry when the offender attempts to escape, under Section 3492, Revised Statutes 1929, this case does not come within either of those classes. The prosecution in this instance was based on a warrant. But were it otherwise the general rule is that a written complaint is necessary even after an arrest without a warrant. [16 C. J. sec. 495, p. 288.]

And in the ordinary felony case, such as this, the rule is practically universal that a verified complaint must be filed as a prerequisite to the issuance of a warrant and the arrest of the accused. [16 C. J. sec. 495, p. 287, sec. 509, p. 295; 8 R. C. L. sec. 67, p. 105; 1 Bishop's New Criminal Procedure (2 Ed.), sec. 230, p. 180 et seq.] As we have said, our statute requires it. In the case cited by the State as the leading decision on the question in Missouri, State v. Flannery, 263 Mo. 579, 173 S. W. 1053, there were two opinions. The principal opinion by WALKER, J., holds defects and informalities in a complaint will not invalidate the subsequent proceedings "unless it fails utterly to state the substance of the offense;" and that a complaint is sufficient "which states the substance of the felony, the time and place of its commission and the name of the accused." This is an authority against the State and in favor of the appellant, because it amounts to a holding that there must be some sort of a written complaint filed; and although the opinion did not have the concurrence (except as to result) of a majority of the judges on Division 2, it nevertheless has been cited approvingly since in State v. Bauer and DeBartalo, 321 Mo. 603, 610, 12 S. W. (2d) 57, 59.

The concurring opinion in this Flannery case, which expressed the views of the other two judges on the Division, does lend support to the State's contention. It says when the accused allows himself to be bound over at a preliminary hearing and gives bail, he waives even the entire failure to file a complaint. But those remarks were made *arguendo*, and were not necessary to a decision of the cause. Furthermore the two cases cited as authority for the statement do not bear it out. One of them, Cunningham v. State, 116 Ind. 433, was a suit on a forfeited recognizance given in these circumstances. Previously while testifying in another case the court thought there was ground for believing the defendant had committed perjury. Thereupon an *order* was entered binding him over to the next term of court to answer the charge of perjury. The defendant was arrested on the order, gave bond at the next term was indicted by a grand jury; but he absconded, and hence the suit on his bond. The Indiana court ruled the bond was binding and that by giving it the defendant

waived "all defects, errors and illegalities" in the prior proceedings, but said· it was unnecessary to decide whether "the particular order, in all its details" was valid. ▋ The proceeding appears to have been *sui generis* and in the nature of one for contempt. But it is plain the court order, itself, performed the office of a complaint, and that the ruling, in principle, bears only on the waiver of defects and irregularities, and does not purport to palliate the complete omission of a jurisdictional step. The other decision cited in the concurring opinion in the Flannery case is State v. Ritty, 23 Ohio St. 562, which is clearly not in point. There, there *was* a complaint and the defendants "pleaded not guilty," "waived an examination," and were bound over to the probate court. In the latter court they moved to quash the information filed because the justice had not "inquired into the complaint" before binding them over. The motion was sustained, but the Ohio Supreme Court held, this ruling erroneous, which we should say was obviously correct.

In the instant case it is abundantly clear from the record that the appellant did not waive or intend to waive preliminary hearing. In the absence of a waiver the information could not be filed without a preliminary hearing. Under the statute that hearing could not be held without a complaint. Nothing here said is to be understood as weakening or limiting the holdings in prior decisions that in preliminary hearings magistrates act ministerially, and that their proceedings should be scrutinized with all allowable indulgence; but a jurisdictional foundation must be laid, as is held in civil cases. [Odle v. Clark, 2 Mo. 13, 22 Am. Dec. 433.]

The further contention is made by the State that even if the filing of a complaint was jurisdictional and could not be or was not waived, nevertheless the justice's transcript viewed as a whole shows one was filed, or at most is merely silent on the point in which situation there is a presumption that it was filed. On these questions State v. Lettrell (Mo.), 39 S. W. (2d) 556, and State v. Caviness, 326 Mo. 992, 33 S. W. (2d) 940, are cited.

▋ As to the presumption, it is said in State v. Stegall, 318 Mo. 643, 647, 300 S. W. 714, 715, "there being as a rule no presumption in favor of the jurisdiction of a justice, it should appear affirmatively upon the face of the record of his proceedings that he had jurisdiction of the parties and the subject-matter." To the same effect is State ex rel. Kelly v. Trimble, 297 Mo. 104, 119, 247 S. W. 187, 191. The Lettrell case cited by the State, was not dealing with the proceedings of a justice of the peace, but with the record of a circuit court in the absence of a bill of exceptions. In the Caviness case there was a complaint.

Does the justice's transcript, construed as a whole, show a written, verified complaint was filed? The certificate thereto declares it to be "a true and complete transcript of all proceedings had before me in

the above entitled cause," but no complaint is included or shown, which is equivalent to a recital that there was none. The warrant for the arrest of the defendant does say "complaint has been made before me . . . upon the oath of S. E. Gragett," etc.; but it will be noted there is no statement either that the complaint was in writing, or that it was filed. It may as well have been oral—more likely so, since the mere presentation thereof, if in writing, would have been a filing. [State v. Hockaday, 98 Mo. 590, 13 S. W. 246.] The warrant states the charge was "unlawfully and feloniously transport(ing) moonshine whiskey; the first appearance bond says "transporting whiskey;" the application for change of venue, "transporting intoxicating liquors;" the second appearance bond similarly names the offense; and the final bond for appearance in the circuit court says "transporting moonshine whiskey." Speaking purely from the viewpoint of construction one would say that if there had been a written complaint at the beginning of the proceedings, there hardly would have been so much laxity and discrepancy in designating the offense in subsequent papers, especially considering the fact that only the transportation of "hootch," "moonshine" or "corn whiskey" is a felony. [Secs. 4481, 4500, 4524, R. S. 1929.]

The learned prosecuting attorney in arguing in the circuit court against the plea in abatement intimated a written complaint had been filed with the justice against the appellant and one or two other defendants, jointly. But no evidence was offered and no effort made to amend the transcript or supply the complaint. This, very likely, was because the State's counsel were relying on the Flannery case, hereinbefore reviewed. Proper administration of our criminal laws requires that the preliminary proceedings of justices in felony cases be dealt with liberally in the higher courts, but this record transgresses the limits to which we can go. The appellant made a timely and direct attack on the proceedings, before trial, by his plea in abatement. It should have been sustained. On a retrial of the case we see no reason why the transcript cannot be amended or supplied, in accordance with the facts, in the Stoddard County Circuit Court. [Sec. 3565, R. S. 1929.]

The judgment is reversed and the cause remanded. All concur.